MAMIE KATHERINE VERMILLION, ADMINISTRATRIX OF ESTATE OF CHARLES VERMILLION, RESPONDENT, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, A CORPORATION, APPELLANT.—93 S. W. (2d) 45.

St. Louis Court of Appeals.    Opinion filed April 7, 1936.

Appellant's motion for rehearing overruled April 28, 1936.

*Arthur Kreisman* and *Robert L. Aronson* for respondent.

994

*Fordyce, White, Mayne & Williams* and *Paul S. Schmid* for appellant.

996

McCULLEN, J.—Respondent, plaintiff below, brought this suit against appellant insurance company, defendant below, on a policy of life insurance which had been issued by defendant on the life of Charles Vermillion, plaintiff's deceased husband.

A trial before the court and a jury resulted in a verdict and judgment in favor of plaintiff, and against defendant, in the total sum of $805, which included a penalty for vexatious refusal to pay and attorney's fees. Defendant in due course brings the case to this court by appeal.

The petition of plaintiff alleged the issuance by defendant of the policy in question, payment of the required premium, the death of the insured and the performance by the insured up to the time of his death and by plaintiff thereafter of all the terms and conditions of the policy to be performed by them, demand by plaintiff for payment and the refusal by defendant, without just cause or excuse, to pay, and concluded with a prayer for judgment for $500, the face amount of the policy, together with interest at six per cent per annum from November 14, 1932, the date of the death of the insured, ten per cent of the amount of the policy added as penalty for vexatious refusal to pay, and an attorney's fee of $200.

The answer of defendant contained a general denial, after which it was alleged in substance that the insured stated in his application dated April 4, 1932, that any policy granted in pursuance thereof would be accepted by him subject to the conditions and agreements contained in said policy; that in said application the insured stated that his health at that time was good and that he then had no mental defect or infirmity, and that he had never suffered from consumption, heart disease, habitual cough, etc. Defendant further alleged that relying upon the truthfulness of said statements and representations, and in further consideration of the payment of certain premiums, it issued and delivered the policy of insurance in question to the insured. The answer further alleged that at the time of said application, as well as on April 11, 1932, the date of the delivery of the policy, plaintiff was, in truth and in fact, suffering from latent syphilis, chronic heart disease, swelling ankles, lues, nephritis, shortness of breath, cough frequency and nocturia, and had been suffering from said ailments and was under the care of physicians for a long time prior to the date of said application, and that by reason thereof the insured died of heart disease and syphilis.

It was further alleged in the answer that the policy issued by defendant upon said application provided as follows:

"This policy shall not take effect if the insured die before the date hereof, or if on such date the insured be not in sound health, but in either event the premiums paid hereon, if any, shall be returned."

The answer further alleged that defendant had no knowledge of the aforesaid misrepresentations until after the insured's death, and

had no knowledge of his unsound health at the time of the delivery of the policy; that if it had known that the insured was not in sound health, it would not have issued said policy of insurance; that the matters so misrepresented by the insured and the diseases from which he was suffering at the time of his application and the delivery of the policy contributed to his death, and that defendant had tendered and deposited in court for the use of the legal representatives of the insured the premiums paid on said policy.

Defendant assigns as error the trial court's refusal to sustain its demurrers at the close of plaintiff's case and at the close of the entire case, but since these points are not even mentioned in defendant's points and authorities or in the argument in its briefs, they are considered as having been abandoned.

Defendant further assigns as error the action of the trial court in permitting plaintiff to present to the jury a part of defendant's answer without presenting the entire pleading, and also the court's refusal to permit the introduction of testimony concerning statements of plaintiff with respect to her husband's health. At the hearing in this court, however, these points were waived by counsel for defendant.

The questions for determination in this court relate to the refusal of the court to permit defendant to introduce the case history made at the time the insured was admitted to the St. Louis City Hospital on May 31, 1932, and also the court's refusal to permit defendant to introduce the entire hospital record covering the period of treatment of the insured at that hospital between May 31, 1932, and June 14, 1932.

Defendant called as a witness Stella M. Dailey who testified that she was employed at St. Louis City Hospital No. 1 as custodian of the records; that as such she had in her charge records showing the admission of Charles Vermillion to the hospital. Charles Vermillion, the insured named in the policy in question, was also known as Charles Miller. The witness produced two records of the hospital, the first showing that Mr. Charles Miller was admitted to the hospital on May 31, 1932, and discharged on June 14, 1932. The second record showed Miller's re-admittance to the hospital on August 2, 1932, and his discharge therefrom on September 13, 1932. The first record was marked as Defendant's Exhibit No. 6, after it had been identified by the witness as an official record of the City Hospital No. 1 of the City of St. Louis. Defendant's counsel then stated that he desired to offer and introduce in evidence said Defendant's Exhibit No. 6, saying:

"We desire at this time to read the case history with reference to his history at the time he entered the hospital, given to the hospital."

Counsel for plaintiff objected to the introduction of said record on the ground that the entries made therein were confidential communica-

tions between patient and doctor and were, therefore, privileged and that the privilege had not been waived. Counsel for defendant insisted that under certain rulings of the courts, such hospital records were admissible "unless the plaintiff here can show that this history was given to a doctor."

At this stage of the trial on the first day, the court adjourned until the next day to enable the trial judge to consider the point raised. On the next morning the objection of plaintiff to the introduction of the proffered evidence was sustained by the court and defendant saved its exception to the ruling of the court.

A little later in the trial defendant again offered the hospital records in evidence in a formal offer of proof, and in that connection made the following statement to the court:

"The defendant desires to introduce first the Case History as shown on the very first written page under the heading 'Case History,' and dated May 31, 1932. The defendant desires to offer that into evidence upon the ground that there is no showing that any question of privilege is involved, inasmuch as there is no signature of any attending physician or of anyone shown to work directly under an attending physician in connection with the case history. And further, inasmuch as the hospital records are by specific enactment of statute admissible in evidence, we feel that this case history is relevant and admissible."

The record shows that the defendant continued on at this point with its offer of proof in the following language:

"The defendant further desires to offer the entire hospital record showing the entrance in City Hospital No. 1 of Charles Miller on May the 31st, 1932, and also the entire record showing the entrance of the same Charles Miller, also known as Charles Vermillion, under admission number 7461 on August 2nd, 1932, on the ground that in the opening statement of counsel for plaintiff to the jury he very definitely told the jury that there was nothing wrong with the plaintiff's deceased husband, and made other remarks concerning the personal knowledge of plaintiff with reference to his condition and with reference to his illness, which counsel claimed was first known to the insured on and after his entry into the hospital. The defendant feels this is admissible on the ground that counsel thereby waived any privileged character of the hospital records . . ."

It will thus be seen that defendant offered separately first a part of the hospital record consisting of the case history, and, second, the entire hospital record showing the entry of Miller into the hospital on May 31, 1932, and August 2, 1932. Counsel for plaintiff objected to the offers of proof thus made on the ground that "In addition to the objection made yesterday, the record of August 2nd has not even been identified at any time as a proper record, not marked as such, in addition to the ground that all these records are privileged."

The court sustained plaintiff's objection and defendant saved its exception, whereupon defendant requested that the second record be marked as Defendant's Exhibit No. 7, which was accordingly done. Plaintiff objected to the marking of said exhibit as "Not being identified by the record clerk of the city hospital. She identified the first record but did not identify the second record. This is in addition to the objection that all these records are privileged."

The trial judge, in answer to plaintiff's objection, said: "Well, assuming she identified it, I will sustain the objection." Defendant saved its exception to the ruling of the court.

Section 9056, Revised Statutes of Missouri, 1929 (Mo. Stat. Anno., Sec. 9056, p. 4196) provides that all superintendents or managers or other persons in charge of hospitals or other institutions, public or private, to which persons resort for treatment of disease, ". . . are hereby required to make a record of all the personal and statistical particulars relative to the inmates in their institutions. . . . And in case of persons admitted or committed for medical treatment of disease, the physician in charge shall specify, for entry in the record, the nature of the disease, and where, in his opinion, it was contracted. The personal particulars and information required by this section shall be obtained from the individual himself if it is practicable to do so; and when they cannot be so obtained, they shall be secured in as complete a manner as possible from relatives, friends, or other persons acquainted with the facts."

There is no doubt that official hospital records, properly identified and shown to be kept pursuant to the requirements of the statute, are admissible in evidence as contended by defendant. [Kirkpatrick v. Wells, 319 Mo. 1040, 6 S. W. (2d) 591.]

The foregoing statement of the law, however, must be qualified in cases where such records are sought to be introduced in evidence and are met by objection based on the claim of privilege arising by virtue of the confidential relationship of physician and patient. In this situation we must have recourse to another statute which provides:

"The following persons shall be incompetent to testify: . . . fifth, a physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." [R. S. Mo. 1929, sec. 1731 (Mo. Stat. Ann., sec. 1731, p. 4011).]

Defendant argues that plaintiff had every opportunity to prove his contention that the information shown in the case history was a confidential communication and therefore privileged, and that plaintiff did not avail herself of such opportunity, but merely assumed

that because the case history was found in the official hospital records it must necessarily be of a privileged nature. Defendant argues that it was incumbent upon plaintiff to show the privilege and that the mere assertion of plaintiff's counsel that such information was privileged, without proof of any kind being offered in support of that assertion, did not justify the trial court in assuming that it was privileged and rejecting that part of the hospital record.

Defendant cites a number of cases which hold in effect that where a party to litigation seeks to exclude the testimony of a physician on the ground that it is privileged, the burden rests upon such party to show that the testimony or evidence sought to be introduced comes within the terms of the statute granting the privilege. The cases cited by defendant do unquestionably announce and apply this principle of law. It is clear that before a court can declare a physician incompetent to testify as to the declarations of a party made to him, the facts which render the physician incompetent under the statute must appear, as was held in Bowles v. Kansas City, 51 Mo. App. 416. Furthermore, the mere assertion of the privilege, without any showing of facts or circumstances from which the court can see the necessity for the application of the statute under which the privilege is claimed, is not sufficient to warrant the court in rejecting the proffered evidence or testimony. Neither is the mere relationship of physician and patient alone sufficient to warrant a court in rejecting, on the ground of privilege, evidence which would otherwise be competent. As was said by this court in Allen v. Allen (Mo. App.), 60 S. W. (2d) 709:

"For instance, in the case of physician and patient, the physician is not incompetent to testify to all communications made to him by his patient, but only to such information as he may have acquired while attending him in a professional capacity, and which was necessary to enable him to prescribe for such patient as a physician or do any act for him as a surgeon. Obviously in such an instance the burden of showing incompetency should be upon the party asserting it." [Allen v. Allen, supra, l. c. 711.]

In the case at bar, however, we believe the relationship of physician and patient, as well as the fact that the information contained in the case history was obtained by virtue of that relationship, were sufficiently shown on the face of the case history itself so as to warrant the court in excluding it upon the objection being made that it was a privileged communication from a patient to a physician. The very first entry in the case history part of the City Hospital record is as follows:

"Patient enters hospital with complaints of dyspnea, swelling of the ankles, tire easily. This was first noticed 3 mo. ago. History of lues."

It is true, as asserted by defendant, that the first page of the case history part of the hospital record is not signed by any doctor, but we think the signature of a doctor thereon was not necessary as a basis for the claim of privilege in this case. It must be remembered that the very theory on which defendant claimed that the hospital record was admissible in evidence was that it was a public record required by law to be kept by the hospital. At common law hospital records were not admissible in evidence. Such records have become admissible, however, under Section 9056, Revised Statutes of Missouri, 1929, the pertinent portions of which we have heretofore set forth herein. Reference to that statute shows that persons in charge of hospitals are required to make a record such as was made in this case by the City Hospital, and that ''In case of persons admitted or committed for medical treatment of disease, the physician in charge shall specify, for entry in the record, the nature of the disease and where, in his opinion, it was contracted. The personal particulars and information required by this section shall be obtained from the individual himself if it is practicable to do so. . . .''

It is the contention of the defendant that the hospital record containing the case history is admissible because it is such a record as was required by the statute to be kept. An inspection of the hospital record, including the case history contained therein, shows that it purports on its face to be such a record as was required by statute to be kept. That is to say, it purports on its face to contain information concerning a person who was admitted to the hospital for ''medical treatment of disease.'' The entry in the case history part of the record heretofore set forth refers to the *complaints* made by the patient himself, for it reads: ''Patient enters hospital with complaints of dyspnea, etc.'' This information appears to have been acquired in accordance with the requirements of the statute that ''the personal particulars and information required by this section shall be obtained from the individual himself, if it is practicable to do so.''

These entries in the hospital record itself constituted a prima facie showing that the information, contained not only in the case history part of the hospital record but also in other parts thereof, was of a confidential and privileged character. If, as claimed by defendant, such information was not given by the patient to the hospital physicians for the purpose of enabling the physicians to prescribe for the patient, then the burden was on the defendant to produce evidence to satisfy the court to that effect and to overcome the prima facie showing of the confidential character of the information appearing therein, in view of plaintiff's assertion of privilege on that ground.

The rule is well established in this State that hospital records, containing information obtained by a physician from a patient for the purpose of enabling the physician to treat or prescribe for the patient,

are as fully privileged as would be the testimony of the physician himself concerning such information where the privilege is claimed and has not been waived by the party asserting the claim of privilege. It has been held that clinical and hospital records required by law to be kept are admissible except where questions of personal privilege or improper identification arise. [Shaw v. American Ins. Co. (Mo. App.), 33 S. W. (2d) 1052. See, also Rush v. Metropolitan Life Ins. Co. (Mo. App.), 63 S. W. (2d) 453, and Cradick v. John Hancock Mut. Life Ins. Co. (Mo. App.), 256 S. W. 501.]

We are of the opinion that the evidence contained in the case history, as well as in many other parts of the entire hospital record, was of a confidential nature acquired from the patient by the physician in charge of the hospital, or by physicians acting for him, for the purpose of enabling such physicians to treat the patient in the hospital, and in the absence of any proof to the contrary, the trial court was warranted in sustaining plaintiff's claim of privileged communications and in excluding the proffered evidence, unless plaintiff can be said to have waived such privilege, as defendant contends she did by reason of the opening statement made by plaintiff's counsel at the beginning of the trial.

After the jury had been empaneled and sworn, counsel for plaintiff made an opening statement to the jury in which he said plaintiff would show that Vermillion (the insured) was working steadily every day for about ten hours a day in a barber shop; that the insured was a very heavy man and that when he took the application for the insurance he was working and had been working steady for a long time; that nothing was wrong with him at all; that after he had worked at the barber shop for some little time, he put on weight and it became hard for him to stand on his feet; that he left that particular shop and later went to work for another barber and worked there doing the same work. Counsel for plaintiff went on in his opening statement to say that the testimony would show that the insured worked steady and didn't lose any time from work at all; that later, because of his sudden gain in weight, the insured went for examinations to find out what was wrong with him and then for the first time, which counsel stated was a month or six weeks after the issuance of the policy, the insured noticed there was something wrong and he went to obtain medical attention; that later the insured went to Arkansas, did outside work on a farm and while there he died. Counsel concluded this part of his opening statement by saying:

"And we are told he died of heart trouble. Now, gentlemen, if the testimony shows all that, and it shows the first intimation this man had of anything wrong with him whatsoever was subsequent or after the date of the particular policy in question, then the court

will instruct you that your verdict should be for the plaintiff and on that testimony we expect a verdict at your hands."

Immediately following the above mentioned opening statement, plaintiff's case was presented consisting of the introduction in evidence of plaintiff's Letters of Administration as Exhibit No. 1, the policy of insurance sued on as Exhibit No. 2, and an extract from defendant's answer to the effect that the insured had died on a particular date, as Exhibit No. 3. As heretofore stated, defendant's point in connection with plaintiff's introduction of part of defendant's answer has been waived and we need give it no further attention. In addition to the above evidence, plaintiff's counsel himself took the witness stand and testified concerning attorney's fees, whereupon plaintiff rested her case.

From the foregoing it will be seen that plaintiff did not introduce any evidence whatsoever with respect to the condition of the insured's health, although it was referred to by her counsel in his opening statement.

Defendant earnestly insists that by the opening statement of her counsel plaintiff asserted facts concerning the condition of the insured's health at the time of the writing of the application, and that by her failure to back up or sustain such statement with testimony, the privileged character of the information contained in the hospital record and in the case history part of such record was waived so that defendant should have been permitted to introduce the hospital records in evidence to refute plaintiff's claim made to the jury as to the health of the insured at the time in question.

We are unable to agree with defendant's contention with respect to this point. The purpose of an opening statement by counsel is to acquaint the jury with the nature of the case which they are about to be called upon to decide. It is intended to direct the minds of the jurors to certain features or portions of the testimony or evidence which in the judgment of the counsel making the opening statement he believes to be important and which he expects to introduce. The matters referred to in an opening statement may or may not be within the proper issues as defined by the pleadings in the cause. When the time comes to introduce evidence in a trial, the court may reject a part of evidence offered even though counsel may have declared in an opening statement that he would introduce such evidence. The issues in the trial of a cause arise out of the pleadings and not out of opening statements of counsel. The issues in a case cannot be enlarged or affected by the character of opening statements. [Moore v. Dawson, 220 Mo. App. 791, 277 S. W. 58.]

It is true counsel may make a statement during a trial, either as an opening statement or during the progress of the trial, which will bind his client provided it be made in such manner and under such

circumstances as to warrant the court in giving it that effect. We know of no authority, however, holding that an opening statement by counsel as to what the testimony will show has the effect of waiving the privileged character of information obtained by a physician from a patient where no testimony whatsoever as to the privileged matter has been introduced by the party asserting and claiming the privilege. After all, an opening statement is a forecast of what counsel *expects* the testimony to show. His expectations may not be realized for various reasons. The court may rule out the testimony which he *expected* to introduce.

Waiver is the voluntary, intentional relinquishment of a known right, and we do not see how it can be said in this case that plaintiff voluntarily and intentionally relinquished the right to claim the privilege of excluding the hospital records on the ground that they contained confidential communications between patient and doctor, merely because of a statement made by her counsel as to the condition of health of the insured, which was not followed up by any evidence on the part of plaintiff or any witness called by her.

The failure to present testimony on a subject referred to in an opening statement may or may not be the basis of proper argument to the jury by the opposite party, depending upon the nature of such testimony, its competency and relevancy, as well as other circumstances arising in the trial, but it cannot be held to work an involuntary waiver of a privilege which the law gives for the protection of the confidential relationship of physician and patient where that privilege, as in the case at bar, is expressly asserted and claimed.

It has been held that an attorney's statement to the jury of what he expects to prove on the trial of a cause is not sufficient to lay the foundation for the admission of evidence which is otherwise inadmissible. [Reserve Loan Life Ins. Co. v. Leising (App. Ct. Ind.), 134 N. E. 667.]

In Moore v. Dawson, supra, wherein a judgment had been rendered for plaintiff, the defendant contended in the appellate court that the trial court had erred in permitting plaintiff to show that defendant had entered into certain agreements. At the time the evidence was introduced, the trial court stated that under ordinary circumstances it would have been incompetent but the court admitted it because of remarks of respective counsel in their opening statements to the jury. The Kansas City Court of Appeals, in an opinion by Judge BLAND, said:

"We think that the court erred in admitting the testimony. The issues in a lawsuit are made up by the pleadings, and not by opening statements, or pleadings plus the opening statements. Of course, an admission made by any party through his attorney in an opening statement is available to the opposite party, but the opening state-

ment of counsel is not for the purpose of defining the issues. No statement should be made outside of the issues made in the pleadings. If such statements are attempted to be made, they are improper and objections to them ought to be sustained by the court, or he may stop counsel of his own motion. The mere fact that neither counsel object does not result in the pleadings being enlarged or changed. If such were the rule, it would be often difficult to know what were the real issues in a case. We think that under the circumstances it is clear that the testimony was inadmissible. (Citing cases.)'' [Moore v. Dawson, 220 Mo. App. 791, 797, 277 S. W. 58, 61.]

The right to invoke the privilege of excluding confidential communications between a physician and a patient as given by the statute, should, of course, not be permitted by the courts to be used in any other capacity than that of a shield of protection which the statute was plainly intended to provide. In other words, a party should not be permitted to waive the privilege of secrecy for his own benefit and claim privilege of secrecy as to the same matter and thereby prevent the opposite party from presenting evidence to refute the evidence presented by the party who has waived the privilege. However, the privilege has been guarded by the courts to such an extent that the right to invoke it under the statute with respect to a patient's communication with his physician has been held not to be waived by a patient testifying on cross examination concerning the treatment he had received from the physician, for the reason that such testimony having been given on cross examination, it could not be held that the waiver of the privilege was voluntary. [Monpleasure v. American Car & Fdry. Co. (Mo. App.), 293 S. W. 84, 86.]

It will be noted in the case at bar that the opening statement made by plaintiff's counsel did not in any manner whatsoever refer to the treatment received by Miller, the insured, as a patient in the hospital, and there was no evidence whatsoever introduced on behalf of plaintiff with respect to such treatment at any time or with respect to the condition of the health of the insured. In view of this state of the record, we are of the opinion that the court's action in excluding the case history, as well as the entire hospital record, was proper. We find no error in the matters complained of by defendant in this court, and it follows that the judgment should be affirmed. It is so ordered.

*Hostetter*, P. J., concurs; *Becker*, J., not sitting.