**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION OF MISSOURI, Relator-Appellant,**

**v.**

**Frank G. FENIX and Pearl Fenix, Defendants-Respondents.**

**No. 7663.**

Springfield Court of Appeals.

Missouri.

Feb. 20, 1958.

Motion for Rehearing Overruled March 21, 1958.

Robert L. Hyder, Minor C. Livesay, Jefferson City, Roy Coyne, Joplin, for relator-appellant.

Paul E. Bradley, William O. Russell, Robert E. Seiler, Joplin, for defendants-respondents.

STONE, Presiding Judge.

In this proceeding by the Missouri State Highway Commission (hereinafter referred to as the Commission) to condemn a right of way for relocation of Missouri State Highway 57 in Jasper County, commissioners awarded $4,102 to defendants, Frank G. Fenix and Pearl Fenix, for appropriation of the right of way across their tract in Webb City, Missouri. Upon timely exceptions, a jury trial was had which resulted in a verdict and judgment awarding no damages to defendants. Thereafter, defendants' motion for new trial was sustained for error (1) "in admitting testimony and allowing argument on * * the knowledge * defendants had or may have had of the proposed construction of the highway prior to the time defendants bought and/or improved the premises in question" and (2) in admitting in evidence two photographs of defendants' tract taken after appropriation of the right of way. We have the case upon the Commission's appeal from the order sustaining defendants' motion for new trial.

In August, 1952, defendants purchased from "the Gunning Estate" for $20,000 a rectangular tract of land (hereinafter referred to simply as the tract), which was 183 feet in width, north and south, and 390 feet or "a block" in length, east and west. On the east end, the tract fronted for 183 feet on Madison Avenue, a paved north-and-south street in Webb City; and, the north portion of this frontage on the west side of Madison was "located squarely in front of" U.S. Highways 66 and 71 as they entered Madison from the east at this "T-intersection" and "made a square turn" to the south on Madison. On the west end, the tract was bounded by Oakland Avenue,

a "blacktop" north-and-south street. Relative to east-and-west streets, the tract was near the middle of a block, in that it was bounded on the south side by "a 20-foot paved (east-and-west) alley," while on the north it was "150 to 200 feet" to the nearest east-and-west street. As Highway 57 was relocated, its east-and-west roadway constituted a continuation or extension (to the west of Madison Avenue) of the east-and-west roadway of Highways 66 and 71; the former "T-intersection" made by the entrance of Highways 66 and 71 into Madison from the east was converted into a conventional intersection with a "four-way stop"; and the tract became "a corner lot" bounded on the north side by Highway 57, a limited access road. In the acquisition of right of way for Highway 57, the Commission condemned a strip off the north side of the tract, the condemned strip being 29.17 feet in width, north and south, on the east end of the tract (reducing defendants' frontage on Madison Avenue from 183 feet to 153.83 feet) and being 37 feet in width, north and south, on the west end of the tract (reducing defendants' frontage on Oakland Avenue from 183 feet to 146 feet).

Within ninety days after their purchase in August, 1952, defendants began to prepare the tract for construction of a motel and, by June 1, 1953, the stipulated date of appropriation of the condemned strip, two double cabins had been finished and seven other cabin units were under construction on the tract. Defendants asserted that, when they acquired it, the tract was "a natural" for a motel, "just about wide enough (north and south) to build two rows of cabins" running east and west with a playground in the center, and that the condemned strip was "the key to that motel" because the strip was "located squarely in front of" Highways 66 and 71 as they approached Madison Avenue from the east and a sign and cabins on the condemned strip would have been visible to approaching west-bound traffic on those highways "for a mile away." After the condemned

strip was taken, defendants did not have adequate space (so they said) to construct a second row of cabins running east and west along the north side of the tract (the first row having been located along the south side) and could not "make an eye-appealing motel." Opinion evidence adduced by defendants as to the alleged reduction in the fair and reasonable market value of the tract, by reason of appropriation of the condemned strip, ranged from $6,600 to $22,000. On the other hand, the Commission offered substantial evidence that the special benefits accruing to the tract by reason of location and construction of Highway 57 exceeded the damages resulting therefrom, and that defendants had sustained no net damage.

Whether defendants knew, when they purchased the tract in August, 1952, of the proposed relocation of Highway 57 along the route for which the condemned strip subsequently was appropriated, became a prominent and sharply-disputed factual issue at the trial. Defendants readily admitted that they had talked with representatives of the Commission, but they vigorously denied that they had learned, prior to acquisition of the tract, of the contemplated appropriation of the condemned strip. In fact, defendants said that the Commission's representatives then "didn't know" whether or where Highway 57 would be relocated. However, the district right of way agent for the Commission testified positively that defendant, Frank G. Fenix, and his son had called at the Commission's office "approximately two weeks prior" to their purchase of the tract, and that, in response to their inquiries, the right of way agent had given them precise information as to the route of Highway 57 and "exactly what we planned to take" from the tract.

 On this appeal, the Commission frankly concedes that, so long as a landowner acts in good faith (and there is no suggestion of bad faith in this case), his right to make the best use of his property

is not foreclosed or affected by his knowledge, at the time of acquisition of such property, of a proposed improvement which might result in subsequent condemnation of the property or a portion thereof. Consult St. Johns Levee & Drainage Dist. v. Hicks, Mo.App., 224 S.W. 127; Showalter v. State, 48 Ariz. 523, 63 P.2d 189, 191(3, 4); Nichols on Eminent Domain (3rd Ed.), Vol. 4, § 13.14, p. 222; 18 Am.Jur., Eminent Domain, § 256, p. 896. But, the Commission contends that the evidence under scrutiny was competent and admissible on the theory that the prior *action* of defendant, Frank G. Fenix, and his son had been inconsistent with their position at the time of trial. That any witness may be impeached or discredited by showing prior conduct inconsistent with his testimony [58 Am.Jur., Witnesses, § 724, p. 390; 98 C.J.S. Witnesses, § 464, p. 331] is a settled principle which has found ready recognition in condemnation cases. State ex rel. State Highway Commission v. Shain, 340 Mo. 802, 805, 102 S.W.2d 666, 668(3, 4); State ex rel. State Highway Commission v. Hoffmann, Mo. App., 132 S.W.2d 27, 30–31(4); Nichols on Eminent Domain (3rd Ed.), Vol. 5, § 18.45, loc. cit. 185. And, it is true that, as the Commission argues, whether there is an inconsistency should be determined "by the *whole impression or effect* of what has been said or done" [Wigmore on Evidence (3rd Ed.), Vol. III, § 1040, p. 725]; but, since the end sought to be attained by offering evidence of self-contradiction is "to show the witness to be in general *capable of making errors* in his testimony" [Ibid., § 1017, p. 684], or, more bluntly put, to show " 'a defect either in the memory or in the honesty' of the witness" [Ibid., § 1017, loc. cit. 685], some *real inconsistency* must appear *"prima facie"* before evidence of alleged inconsistent statements or conduct becomes competent. Ibid., § 1040, p. 725. Compare State ex rel. State Highway Commission v. McMurtrey, Mo., 300 S.W. 2d 521, 525(4).

In the language of its brief, the Commission "was merely trying to show to the jury the fact that (defendants) purchased this property for a motel purpose, well knowing of the coming in the very near future of the public improvement herein known as Route 57" [compare State v. Stabb, 226 Ind. 319, 79 N.E.2d 392, 396]; but counsel do not suggest, and we do not perceive, why or how such fact (if so) would have been inconsistent with defendants' position upon trial that they had been damaged by appropriation of the condemned strip. When the district right of way agent for the Commission talked with defendants prior to their purchase of the tract in August, 1952, such agent admittedly "didn't know when it (Highway 57) would be built because funds were not available at that time." And, defendants had no legal right to rely upon the Commission's intention or plan at that time, whatever disclosure thereof may have been made [Hamer v. State Highway Commission, Mo., 304 S.W.2d 869, 874(7, 8)], for, even after the instant condemnation proceeding was instituted in May, 1953, the Commission still might have abandoned the entire project within ten days after the first assessment of damages by commissioners and, after a new assessment was awarded upon the filing of exceptions to the commissioners' report, at any time until the Commission took possession of the condemned strip. Sections 227.120(13) and 523.040, RSMo 1949, V.A.M.S.; State ex rel. State Highway Commission v. Deutschman, 346 Mo. 755, 761, 142 S.W.2d 1025, 1028(2), and cases there cited. Having logically maintained and successfully established in the Hamer case, supra, that it may not be penalized as a result of advance disclosure of plans for a highway project, the Commission may not, now that the boot is on the other foot, penalize the landowner by reason of such advance disclosure.

The transcript discloses that the false issue as to whether defendants knew, prior to their purchase of the tract, of the Commission's plan for relocation of Highway 57, was lugged into the case in the opening statement of counsel for the Commission,

was dragged back and forth in front of the jurors time and again during the trial, and finally was tossed into their laps in the closing argument. Whether this false issue gave off a fragrant aroma (as it seemed to the Commission) or a nauseous stench (as it seemed to defendants), the scent permeated and pervaded the entire atmosphere, and we have no doubt but that, as the trial judge found, it worked to defendants' prejudice. Compare State ex rel. State Highway Commission v. McMurtrey, supra, 300 S.W.2d loc. cit. 525.

We cannot accept the Commission's suggestion that defendants' counsel waived "any error that might have occurred" and "opened the door" to evidence concerning defendants' prior knowledge of the Commission's plan, by failure to object when this subject was mentioned in the opening statement of counsel for the Commission and by a passing reference to the same subject by defendants' counsel in connection with a rejected offer of certain evidence. An opening statement is an outline of anticipated proof, a forecast of what counsel expects the testimony to show, and its primary purpose is to acquaint the judge and the jury in a general way with the nature of the case at bar, not to test the sufficiency or the competency of evidence which may or may not be admitted when offered. Consult Hays v. Missouri Pacific Railroad Co., Mo., 304 S.W.2d 800, 804–805; Vermillion v. Prudential Ins. Co. of America, 230 Mo.App. 993, 93 S.W.2d 45, 50–51. So, although an opening statement should be confined to an outline of the competent evidence which counsel expects to adduce, the fact that no objection is made to a statement concerning incompetent evidence ordinarily does not make such evidence admissible or constitute a waiver of the right to object thereto when offered. Moore v. Dawson, 220 Mo.App. 791, 277 S.W. 58, 61(9–11); 88 C.J.S. Trial, § 161b, loc. cit. 317. In the instant case, prompt and vigorous objection was interposed when counsel for the Commission made their *initial* inquiry concerning defendants' al-

leged prior knowledge of the Commission's plan for relocation of Highway 57. Compare State ex rel. State Highway Commission v. Blobeck Inv. Co., 233 Mo.App. 858, 110 S.W.2d 860, 863(4). The overruling of defendants' seasonable and sufficient objection having been accompanied by an expression of opinion by the trial judge that the Commission was entitled to show whether defendants had such prior knowledge, certainly they were not required to make repeated objections to like questions, and their original objection to this line of testimony was not waived by their production of countervailing evidence. Taylor v. Kansas City Southern Ry. Co., Mo., 293 S.W.2d 894, 898(3); Chester v. Shockley, Mo., 304 S.W.2d 831, 835(3–5).

Our conclusion that the trial court properly sustained defendants' motion for new trial on the first ground assigned in the court's order disposes of this appeal; but, since the case stands for retrial, we comment briefly concerning admissibility of the photographs taken after the date of appropriation. Of course, the damages (if any) payable to defendants are to be determined as of the date of appropriation [KAMO Electric Cooperative v. Baker, 365 Mo. 814, 287 S.W.2d 858, 861(2), and cases there cited]; but, in such determination, it is proper for the jury to consider the uses for which the tract was suitable and adaptable at that time, having regard to the community's business or wants then existing or reasonably to be expected in the immediate future. In re Armory Site in Kansas City, Mo., 282 S.W.2d 464, 470 (12); Empire Dist. Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78, 81–82(3), and cases collected in footnote 7. Defendants purchased the tract for motel purposes and were constructing a motel thereon at the time of appropriation; and, as indicated above, they assert that the tract's suitability and adaptability for such intended and actual use were affected adversely by taking of the condemned strip. In these circumstances, we believe that the photographs in question, which show the

completed motel, are admissible for what they may be worth [Baustian v. Young, 152 Mo. 317, 324, 53 S.W. 921, 922] as illustrative of the suitability and adaptability of the tract for motel purposes, provided that the date on which the photographs were taken, the nature and extent of the changes after the time of appropriation, and the purpose of the photographic offer are plainly stated to the jury. Consult Robinson v. City of St. Joseph, 97 Mo.App. 503, 509, 71 S.W. 465, 467(4); Bodam v. City of New Hampton, Mo.App., 290 S.W. 621, 624(4). See also Brock v. Gulf, M. & O. R. Co., Mo., 270 S.W.2d 827, 833(8, 10); Reed v. Coleman, Mo.App., 167 S.W.2d 125, 133(15).

The order sustaining defendants' motion for new trial is affirmed and the cause is remanded for retrial.

McDOWELL and RUARK, JJ., concur.