STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Mis-
souri, Respondent,

v.

William L. FRANKLIN et al., on Exceptions
of Walter A. Reich, Edith H. Reich, Rob-
ert O. Reich, Mildred N. Reich, William H.
Reich, Marcile K. Reich, Kenneth K. Bar-
ton, Dyke Barton, William G. Dietrich,
Marjorie R. Dietrich, and Blue Ridge
Shopping Center, Inc., Appellants.

No. 54197.

Supreme Court of Missouri,
Division No. 2.

July 13, 1970.

Robert L. Hyder, Earl H. Schrader, Jr., Minor C. Livesay, Frank O. Benson, Kansas City, for respondent.

Dietrich, Tyler, Davis, Burrell & Dicus, William J. Burrell, James T. Seigfreid, Kansas City, for appellants.

STOCKARD, Commissioner.

In this action for condemnation of 7.288 acres of land for highway purposes the jury award of just compensation was $35,000 and the landowners have appealed. The difference between the award and that to which appellants claim they are entitled exceeds our minimum jurisdictional amount. We reverse and remand because of prejudicial argument. However, some of the other contentions on this appeal present issues which probably would recur in the event of another trial. We will therefore now rule those issues.

In 1953 the landowners began the acquisition of land at the intersection of U. S. Highway 40 and Blue Ridge Boulevard with the purpose of constructing thereon a shopping center. A total of 45 acres was acquired, which included the 7.288 acres subsequently condemned. Effective May 1, 1955, the landowners entered into a lease of the 45 acres for a term of 99 years to Blue Ridge Shopping Center, Inc., a Missouri corporation. The stockholders of that corporation were the same persons who owned the land, and the individual interest of each in the corporation was the same percentage as his interest in the land. The corporation and the landowners will hereafter be referred to as defendants. In the latter part of 1955, by reason of a public announcement, it became apparent that the northern part of the 45-acre tract probably would be acquired by the State Highway Commission of Missouri (hereafter referred to as the "Commission") for the construction of Interstate Highway 70. The landowners acquired additional land approximating seven acres, which on July 30, 1957 was made subject to the 99-year lease to the corporation. When construction of the shopping center was commenced, there was no attempt to use the seven-acre tract which was expected to be acquired for highway purposes. At the time of taking, December 6, 1957, eight buildings were under construction, and 27 leases had been entered into for approximately 86% of the area of the eight buildings. None of the tenants were in possession of any portion of the buildings, and no business was being conducted. Attached

to each lease, as a part thereof, was a sketch or map of the shopping center prepared by defendants' architect showing the proposed location of Interstate Highway 70 over and across the northern portion of the 52-acre tract, and also showing the location of buildings and parking areas. Each of the leases contained a provision to the effect that the lessee understood that a portion of the total area, that portion being described generally in each instrument to be the 7.288 acres subsequently condemned, would probably be acquired by the State of Missouri for highway purposes, and that the lessee agreed that, without affecting the validity of the lease, defendants could at any time convey or sell the described area to the State for highway purposes, and that lessee had no interest in the amount received for the land whether by reason of condemnation or purchase, but instead the money would be retained by the defendants.

The 52-acre tract was irregular in shape. On the west it was bounded by Sterling Avenue and on the south by 43d Street. On the east the area was bounded by Blue Ridge Boulevard, and the northern side was bounded by U. S. Highway 40, which ran in a northwesterly and southeasterly direction. The area condemned was the northerly portion of the 52-acre tract and was for the most part a ravine or depressed area which provided drainage for surface water. According to defendants, the area after being filled would have provided parking space for 802 automobiles. It was also suitable for a combination of parking and peripheral buildings, such as a gasoline station, a restaurant, a drive-up bank or a small insurance office. The area had 275 feet of frontage on Sterling Avenue and 708.12 feet of frontage on U. S. Highway 40, a four-lane highway which could have been used for points of ingress and egress.

Appellant's first point is that the court erred in giving Instruction No. 6, a withdrawal instruction. Certain additional facts pertaining to this issue are necessary.

Defendants offered in evidence the twenty-seven leases which had been entered into between the Blue Ridge Shopping Center, Inc., and various business enterprises. The Commission objected to "the portions [of the leases] stating the amount of the rental to be realized at some future date from these leases and * * * to any attempt * * * to arrive at a value of either before or after of this project on the basis of capitalization of the then rentals." After some discussion, the court admitted the leases in their entirety. Mr. William G. Dietrich, one of the defendants, and the principal witness for defendants, then gave an explanation of each lease in summary form including the rental. There was a guaranteed annual rental of $440,354 provided for in 25 of the leases. Two leases provided that the total rental should be a percentage of the gross sales. All provided for additional rent based on percentages of sales over and above stated figures. However, as previously noted, none of the lessees were in possession, no business was being conducted, and no rentals were being paid on December 6, 1957. In fact, the shopping center was not opened until October 1958. Mr. Dietrich also testified that in his opinion, at the time of taking, the fair market value of the 52-acre tract of land for its highest and best use, agreed to be for a shopping center, was $2,007,838, and the value of the improvements thereon was $1,662,045 or a total value of $3,669,883. It was his further opinion that after the taking the value of the improvements, none having been taken, was the same, but that the value of the land was $1,339,426, leaving a value of the property after the taking at $3,001,471, which resulted in damages of $668,412. The record does not show that he purported to capitalize rentals in arriving at this figure.

During cross-examination of Mr. Dietrich, the Commission brought out that the individual landowners, who claimed damages for the taking of a portion of their land, had executed the 99-year lease to

Blue Ridge Shopping Center, Inc., and counsel then asked that Mr. Dietrich state "what rental payments have been made under that lease," and defendants objected. After extended discussion, counsel for defendants stated: " * * * we will probably not capitalize rental." The court stated that because the defendants would not use their appraisers to testify as to prospective income and capitalize the rental, the objection of defendants would be sustained. Thereafter, defendants called as expert witnesses, Dr. Homer Hoyt, a nationally recognized real estate economist and appraiser who had specialized in shopping centers, and Mr. Thavis Arnote, an experienced realtor, who testified that the damages resulting from the taking were $604,000 and $461,000 respectively. Each stated the basis for his opinion, consisting of approximately twenty different factors, but neither purported to capitalize rentals.

At the conclusion of all the evidence, the trial court gave, at the request of plaintiff, Instruction No. 6, which read as follows: "The evidence of the amount of the prospective rental income shown in defendants' leases is withdrawn from the case, and you are not to consider such evidence in arriving at your verdict." Defendants contend this withdrawal instruction was prejudicially erroneous because "this evidence was material and relevant, being such evidence as would be considered by a reasonably prudent purchaser of the property in question and it was considered by defendants' witnesses in making their appraisals."

 We do not agree that defendants' expert witnesses did or properly could consider the prospective rentals under the circumstances of this case. In the proper circumstances and for proper purposes, favorable leases of property and the amount of income in the form of net rentals derived from property may be considered as evidence bearing on the value of property. City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600; State ex rel. State Highway Commission of Missouri v. Ellis, Mo.App., 382 S.W.2d 225. However, we deem it not to be essential to elaborate on the particular circumstances when such evidence of rentals under leases is admissible in evidence. See Orgel on Valuation under Eminent Domain, 2d ed., §§ 176–187; Nichols on Eminent Domain, 3d ed., §§ 19.2–19–23; 27 Am.Jur.2d, Eminent Domain § 286. In this case the rental provided for in each lease was prospective and speculative in that it consisted either entirely or partially of a percentage of future sales in a shopping center with no previous experience; the rental provided for in the leases was the gross rental and not net rental; and the evidence would have gone to the jury without any guide as to its effect or bearing on the issue of value. In these circumstances the trial judge may exercise discretion to exclude evidence of rental income when the probative value is outweighed by the risk that its admission will be confusing or misleading. United States v. 25.406 Acres of Land, 4 Cir., 172 F.2d 990, 993. However, in any event, the withdrawal of the evidence from the consideration of the jury could not have been prejudicial to the defendants, and the evidence could not have been material for the purpose offered. It was defendants' contention that the rental provisions in the twenty-seven leases were material and relevant to the issue of the value of the shopping center *before* the taking. However, each and every lease contained a provision to the effect that the lessee recognized and agreed that the area which was subsequently condemned would not be available for use by the shopping center, that the defendants could convey away the area without affecting the validity of the lease, and that the lessee had no interest in the money to be received, whether the area was voluntarily sold by defendants or taken by condemnation. Therefore, the rental provided for in each lease was negotiated and arrived at on the basis that the area subsequently taken was *not* to constitute a part of the shopping center. For this reason, if the rental provisions in the leases were material and relevant for any purpose, it is because they would bear on the value of the

shopping center *after* the taking; *not before*. No prejudicial error resulted from the giving of Instruction No. 6.

■ The Commission offered evidence of a special benefit resulting from improved drainage of defendants' land. Defendants contend that the court prejudicially erred in admitting evidence (a) that it cost the Commission $89,000 to construct a 60-inch concrete pipe to handle the drainage on its right-of-way north of defendants' remaining land; (b) that it would have cost the Commission $16,500 to handle the drainage with an open ditch; and (c) that as a result there was a net benefit to defendants of $24,550 computed as follows:

| | |
|---|---|
| Cost of storm sewer to State | $89,900 |
| Less cost of open ditch if it had been built. | $16,500 |
| Difference | $73,400 |
| Less cost of additional three acres required for open ditch. | $14,250 |
| Difference | $59,150 |
| Less value of 7.288 acres taken. | $34,600 |
| Resulting difference as net benefit to defendants from condemnation | $24,550 |

In support of this contention, defendants cite only State ex rel. State Highway Comm. v. Vesper, Mo.App., 419 S.W.2d 469, which we do not consider to rule the issue here. There it was held that it was not error for the trial court to exclude evidence of what the landowner would have been required to pay someone else if the Commission had not built a sewer which was contended to constitute a special benefit. It was held in that case that "Fundamentally, where part of a condemnee's land is taken his compensation is measured by the property's reduced market value. An integral part of this proposition is that the amount of special benefits conferred upon a condemnee's land is measured by the same standard—the increase in market value bestowed on the remaining part of the condemnee's land." In Land Clearance Authority v. Doerenhoefer, Mo., 404 S.W. 2d 385, quoting from State ex rel. State Highway Commission v. Rauscher Chevrolet Co., Mo., 291 S.W.2d 89, this court held: "'It is the established rule in this state, and generally, that the price an owner paid for property being condemned is admissible as some evidence of its value at the time of the appropriation. That rule applies unless circumstances appear which destroy the relevancy or probative value of that otherwise relevant and highly important evidence.'" In this case, as bearing on the issue of value, defendants presented evidence as to the cost, or amount paid for the property affected by the condemnation, and also the amount spent and the amount under contract to be spent in developing a shopping center on the property. Since the amount of special benefits is to be measured by the increase in value bestowed on the remaining part of defendants' land, the price, or cost of the facility constituting the special benefit, absent "circumstances * * * which destroy the relevancy or probative value of that * * evidence" is admissible as "some evidence" of the market value of the remaining land. An engineer of the Commission testified that in the construction of the highway the Commission had built a 60-inch concrete drain which benefited the remaining property of the defendants, and that the cost of that drain was $89,900. He also stated that an open ditch could have been used and that it would have cost $16,500. Subsequently, an expert witness, Mr. A. J. Cato, was asked to assume the construction of the drain at the above stated figure, and to assume that an open ditch would have served the purpose and could have been constructed at the above stated cost. He was then asked whether he had an opinion "as to the increase in the fair market value of the defendants' remaining tract because of this change in the drainage," and after an affirmative answer, he stated his reasons and his conclusion that the value of the remaining tract exceeded the value of

the tract before the taking by $24,550. We find no error prejudicial to defendants in the admission of this evidence.

We come now to the issue which we conclude resulted in prejudicial error. Defendants assign as error certain argument to the jury made by counsel for the Commission to the effect that defendants had knowledge of the proposed highway improvement and for that reason did not intend to use the property taken. They contend that knowledge of the proposed condemnation was immaterial and injected a false issue, and that the argument erroneously caused the jury to disregard Instructions Nos. 3 and 4 pertaining to the determination of damages for the taking.

At the close of all evidence, the court and counsel had a conference out of the presence of the jury concerning instructions. At that conference the court asked if there was any question which might be raised during closing argument which should then be brought to the attention of the court. After some discussion concerning special benefits, counsel for the Commission made this statement: " * * * we may at one point comment upon the testimony of Mr. Dietrich as to his knowledge of the proposed improvement, and that in arriving at the value of the seven acres taken, that it was not planned by him as a parking lot prior to the condemnation * * *." Counsel for the Commission further stated "that the exhibits, et cetera, which they [defendants] have introduced are perfectly proper as an attempt to show the highest and best use of the ground," and that "we are entitled to comment upon his knowledge of the taking and the fact that the leases provided that this was not to be a parking lot as bearing upon that issue." The objection then made was that "it is to attempt to cause the jury to infer that this was a benefit, and again we get back to this question of knowledge, which is a false issue. Any knowledge that we might have as to the proposed improvement is injecting a false issue into the case under the law. * * * the issue is what it was

worth when it was taken and that is the only issue." The court then stated that "the issue as such would ordinarily be a false issue," but "we believe that that particular question was injected in the case by the defendants themselves at the time they introduced the leases. There isn't any question about that. And also we believe that Mr. Schrader's [counsel for the Commission] proposed argument * * * is completely valid under the evidence and under the plaintiff's point of view, and, therefore, he will be permitted to argue that." During argument, counsel for the Commission did refer to the leases and that they all contained as an exhibit the map showing the proposed location of the highway. The argument then continued as follows:

" * * * what did all the leases contain? They all contained Exhibit A, which says and shows the seven acres that we are talking about. Way back when they made these leases, everybody knew the seven acres was being taken. There was no plan of using the seven acres for a parking lot. There was no plan of using it for anything other than a right-of-way for the freeway, and each and every one of the leases contained either the same or an exactly similar paragraph as paragraph 11 in Defendants' Exhibit No. 20, which says, 'we recognize that the State Highway Department is going to take this seven acres.' "

\* \* \* \* \* \*

"And it says that the leases cannot be broken, that the money to be received from * * * this taking of this seven acres goes to the owners of the land, does not go to the tenants. Now, the question is, how do you go about valuing this seven acres? Do you value it as they claim, as a big parking area, or do you value it as a piece of ground that was never intended by them to be used as a parking lot? Do you value it as a ditch, creek bed, which is undisputed, over 50

feet deep in one end? It is our position that that is the way it must be valued. There is no evidence before you other than just their statement that they intended to use it. This particular exhibit that they have displayed up here to you, Exhibit No. 43. [This was a large map showing the entire 52-acre tract, the location of the buildings thereon, the entrances, the parking areas and that 804 parking places and two entrances to Highway 40 could have been located on the 7.288 acres]. There has been no contention that this exhibit showing these entranceways and showing this laid off in parking spaces was ever used before. It was here to illustrate to you what their contention was of what they could have used it in his lawsuit. Nothing to what others planned and the way they planned to use it. This exhibit shows how they intend to show you just for purposes of this lawsuit."

\* \* \* \* \* \*

"It is our position that we didn't hurt their shopping center. They never planned to use it for parking. They knew it was being taken before they got the leases made. All their leases contemplated that this seven acres was going to be gone. We didn't hurt their leases. We didn't hurt their engineering. These were all done in contemplation of this seven acres being gone. It was just another piece of ground."

\* \* \* \* \* \*

"It is the position of the State that we did not, by taking this seven acres, prevent them from doing anything they wanted to do with their property because at and before the time they started their shopping center as it now is, they knew this seven acres was gone, they did not plan to use it. It never was anything other than a piece of ground. It was never intended, and the evidence by their own exhibits, they show it was not intended to be a part of the center."

It is true that because of their information concerning the proposed location of the highway, defendants' architects and designers planned and laid out the shopping center so as not to rely on the availability of the seven-acre tract, and the leases were negotiated on the basis that the tract would not be a part of the shopping center. This evidenced a practical consideration of the factual situation. However, any changes by defendants in their plans for the use of their land because of the advance notice of the intentions of the Commission to acquire the seven-acre tract was taken at defendants' peril because the Commission could have changed its plans for the location of the highway, and even after this condemnation suit was filed it could have abandoned the project within ten days after the first assessment of damages by the commissioners, and under certain circumstances at a later time. § 523.040 RSMo 1959, V.A. M.S., State ex rel. State Highway Commission v. Deutschman, 346 Mo. 755, 142 S.W.2d 1025. Defendants had no legal right to rely on the Commission's plans to build the highway at the proposed location, whatever disclosure thereof had been made, and if the Commission for any reason changed its plans, defendants had no recourse for expenditures made or losses incurred in reliance thereon. Hamer v. State Highway Commission, Mo., 304 S.W. 2d 869. Although the defendants changed their plans to use the land as a part of the shopping center because of their knowledge of the plans of the Commission, the basis for determining the compensation to which they were entitled for the taking of the land was not changed. They were still entitled to damages for the taking of a portion of the 52-acre tract based upon its highest and best adaptable use. In fact, if defendants had proceeded with plans to use the seven-acre tract, knowing of the plans of the Commission to acquire it for highway purposes, and constructed thereon a parking lot or a building, it could have been argued that they did so in bad faith for the purpose of enhancing the damages. See 27 Am.Jur.2d, Eminent Domain § 294.

■ The argument that defendants knew of the intention of the Commission to take the land, and *for that reason* defendants did not intend to use it for a parking lot or as a part of the shopping center, resulted in exactly what defendants incorporated into their objection, the injection of a false issue. The fact that defendants did not intend to use the land taken as a parking lot, or as a part of its shopping center, because it was not suitable for such use could be argued to the jury when supported by the evidence, but as stated in State ex rel. State Highway Commission v. Fenix, Mo.App., 311 S.W.2d 61, 64, "Having logically maintained and successfully established in the Hamer case [Hamer v. State Highway Commission, supra], that it may not be penalized as a result of advance disclosure of plans for a highway project, the Commission may not, now that the boot is on the other foot, penalize the landowner by reason of such advance disclosure."

The Commission attempts to distinguish the Fenix case on the basis that there the evidence of the knowledge of the landowner of the plans of the Commission was brought into evidence by the Commission, while in this case the evidence that defendants knew of the plans of the Commission and did not for that reason, incorporate the seven-acre tract into their plans for a shopping center, was presented by the defendants. The leases did show that the seven-acre tract was not included in the plans for the shopping center, but this evidence also showed that the reason it was not included was because of the proposed taking, not because it was unsuitable for such use and not because regardless of suitability they never intended to so use it in any event.

■ As a general rule knowledge of a proposed taking does not affect the right of an owner to make in good faith the best use of his property until it is actually taken, 27 Am.Jur.2d, Eminent Domain § 294; Annotation 64 A.L.R. 549, and for the same reason the landowner should not be penalized because in good faith he did not enhance the damages by constructing im-

provements on the land to be taken. It is immaterial that the evidence which showed that defendants did not make a certain use of the land because they knew it was going to be taken was presented by defendants, unless this fact was presented in an effort to enhance their damages. The real issue was the amount of damages sustained by reason of the taking, and the highest and best adaptable use of the land taken was material to that issue. It was not material whether defendants relied on the advance disclosure of the Commission to take the land and *for that reason* did not in fact devote it to its highest and best adaptable use.

The Commission cites State ex rel. State Highway Commission v. Thurman, Mo. App., 428 S.W.2d 955, and State ex rel. State Highway Commission v. Schutte Investment Co., Mo., 334 S.W.2d 241. These cases do not justify the argument made in this case.

In the Thurman case the landowners contended that the highest and best use of their property was for building lots, and they asserted that because they were not allowed a direct access to the highway their land was useless for that purpose. The Commission showed that its preliminary plans called for a direct access entrance but that at the written request of the landowners the entrance was moved to the adjoining land of their parents. The Commission relies on the following statement in the opinion: "The fact that defendants requested that the entrance be taken from their property and wrote a letter to that effect were admissions against interest that the jury could consider, along with other evidence as to whether or not defendants actually intended to use their land as building lots." The evidence of the landowners was that they intended to use the land for building lots, and the Commission offered in evidence the letter as an admission against interest on the basis that if they so intended they would not have requested that the entrance, essential to such use, be moved to other land. The fact in this

case that defendants did not plan to incorporate the seven-acre tract into the shopping center because they knew it was going to be taken for highway purposes could not possibly be construed as a declaration against interest, except possibly that thereby they had not attempted to enhance their damages.

In the Schutte case, the landowner had purchased property on which there were buildings which had been declared uninhabitable by the city, and at the time of the purchase it was known that the property was included in the right-of-way limits of a proposed freeway. On appeal the landowner contended that the State had injected the false issue of the landowner's knowledge of the contemplated condemnation. The court pointed out that it was the landowner who first presented evidence of his knowledge of the proposed condemnation, and that landowner's agent had testified that repairs on the buildings had been delayed as the result of the contemplated condemnation and because the State was waiting for an appropriation bill to be signed "so the State could have more money." The agent also testified that because of the delay the landowner was compelled to spend money to protect the property and that the buildings suffered deterioration. In this manner the landowner sought to increase his damages. It was held that the landowner "having injected the matter into the case for the purpose of deriving a benefit, is in no position to complain." The Commission argues in this case that the defendants offered in evidence the leases, which showed that no use of the seven-acre tract was contemplated in connection with the shopping center, and that those leases were offered to enhance their damages, and for that reason it could properly argue that defendants' failure to incorporate the tract into the shopping center because they knew the land would be taken for public use could properly be argued to the jury as material to the issue of just compensation for the taking. Although we agree with the quoted statement from the Schutte case, when applied to the facts of that case, we do not agree that the Schutte case applies to the facts of this case. Defendants did not offer evidence of their knowledge of the impending condemnation, and their failure to use the land because of that knowledge, to enhance their damages. At most it constituted an explanation of their failure to incorporate it into the plans for the shopping center, and landowners are not to be penalized for so acting pursuant to the advance disclosure of the plans of the Commission.

Some of the argument we have set out above was proper. For example, it was proper to argue that by the taking "We didn't hurt their leases. We didn't hurt their engineering." But, we agree that the argument to the effect that because defendants knew of the impending condemnation "there was no plan of using the [seven-acre tract] for anything other than a right-of-way for the freeway," and that "they knew this seven acres was gone" and for that reason made no plans to use it as a part of the shopping center, was prejudicially erroneous and requires a reversal of the judgment.

Other matters presented on this appeal, such as an assumption in argument of a fact not in evidence, and whether the amount of the verdict was so inadequate as to show bias and prejudice, need not now be ruled.

The judgment is reversed and the cause remanded.

BARRETT, C., not sitting.

PRITCHARD, C., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.