**STATE of Missouri, ex rel. Hector W. BENOIT, Jr., M.D., Joseph C. Williams, Jr., M.D., William D. Hoadley, M.D., Relators,**

v.

**Honorable Alvin C. RANDALL, Judge, Respondent.**

No. 53632.

Supreme Court of Missouri, En Banc.

Sept. 9, 1968.

Harry P. Thomson, Jr., R. Lawrence Ward, William H. Sanders, Larry L. McMullen, Kansas City, for plaintiff Joseph C. Williams, Jr., M.D., Shughart, Thomson & Kilroy, Blackwell, Sanders, Matheny, Lombardi & Weary, Kansas City, of counsel.

Darrell L. Havener, Kansas City, for plaintiff Hector W. Benoit, Jr., M.D., Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

Roy F. Carter, Forest W. Hanna, Kansas City, for plaintiff William D. Hoadley, M.D., Sprinkle, Carter, Sprinkle, Larson & Hanna, Kansas City, of counsel.

Lem T. Jones, Jr., Russell S. Jones, Kansas City, for intervenor and/or amicus curiae, Research Hospital and Medical Center.

George L. Gisler, Kansas City, Samuel Weisbard, Chicago, Ill., for respondent, Gisler & Howell, Kansas City, McDermott, Will & Emery, Chicago, Ill., of counsel.

David R. Hardy, John T. Martin, Kansas City, for amicus curiae Ralph Perry and others, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel.

DONNELLY, Judge.

This is an original action in prohibition.

Dr. Terry E. Lilly, Jr., filed a suit in the Circuit Court of Jackson County, Missouri, against Drs. Benoit, Williams and Hoadley. He contends in Count I of his petition that Benoit, Williams and Hoadley conspired to reduce his privileges on the staff of Re-

search Hospital and Medical Center. See Cowan v. Gibson, Mo.Sup., 392 S.W.2d 307. He alleges, in part, that they maliciously "discriminated against plaintiff by applying a different standard of medical and surgical practice to the care of his patients than was applied to the care of patients by other members of the staff." In Count II he asks damages for slander.

Dr. Lilly, in the course of the proceeding in the trial court, filed a motion seeking an order directing the issuance of a subpoena duces tecum to the hospital requiring production of "all official hospital charts, including x-ray pictures, of all patients admitted to Research Hospital in the years 1963, 1964, and 1965 under the care of every member of the staff of Research with privileges to practice General Surgery during said years."

In response to this motion, respondent Judge Randall proposes to enter an order compelling, under designated conditions, the production of records of fifty-five doctors. This proposed order reads, in part, as follows:

"It is hereby ordered by the court that the said motions of each of the defendants requesting the court to refuse to issue a subpoena duces tecum are hereby overruled and the motion of the plaintiff for issuance of a subpoena duces tecum and the motions of defendants and of Research Hospital for protective orders are sustained as herein stated. The Court hereby authorizes, orders and directs Carol Marvin and/or Carol G. Colston, Notaries Public, or any notary public to issue and serve or cause to be served a subpoena duces tecum in the above cause directed to the Medical Records Librarian of Research Hospital, Meyer Boulevard and Prospect Avenue, Kansas City, Missouri, requiring said witness to produce subject to the conditions specified herein at the taking of her deposition in this case on behalf of plaintiff Terry E. Lilly, Jr., on the ———— day of ————, 1967:

"All records of Research Hospital of patients of the defendants compiled during the year 1964 and all records of Research Hospital of patients compiled during the year 1964 wherein the patients were patients of the following designated members of the staff of Research Hospital:

[Naming fifty-five doctors]
provided, however, that production of said patient charts at said deposition shall be subject to the following conditions and limitations:

"1. Before said Hospital shall be required to disclose or produce for inspection by counsel any of the said patient charts the plaintiff shall designate to the Medical Records librarian by number of chart and name of attending physician from all of said patient charts such of them as he desires to have produced at the deposition and identified and copied.

"2. Said records shall be made available to plaintiff at reasonable times at Research Hospital and in reasonable quantities of records so as not to impose hardship on the clerical forces of Research Hospital or upon plaintiff.

"3. It is the intention of the court that plaintiff shall not designate for copying such a large number of records as shall impose hardship on the facilities of Research Hospital. Plaintiff therefore is directed to submit to the court his written designation of the patient records by number of the chart and by name of the doctor admitting the patient in each case. If the court determines that the number of records requested to be copied is reasonable as to quantity then the court will direct that said records be copied.

"4. Notice of such selections for copying as ordered by the court shall thereupon be given to the Medical Records Librarian who shall thereafter and prior to the deposition and prior to copying said records delete or mask over the name and address of the patient together with any other information which identifies or discloses the

identity of the patient involved in each such chart thereby preventing disclosure of such patients' name and identity.

"5. The Medical Records Librarian shall produce, as specified in the subpoena, the selected patient charts, with patient identification deleted, at the Medical Records Room of Research Hospital at ——— o'clock P.M., on ———. ———, 1967, and her deposition shall then be taken, thereafter to be continued from day to day without further order, until completed."

Relators Benoit, Williams, and Hoadley applied for prohibition and we ordered the issuance of our preliminary rule. Briefs of the parties and amicus curiae briefs of the hospital and of thirty-one doctors have been filed. We conclude that the preliminary rule should be made absolute because the proposed order of the trial court would cause a violation of the physician-patient privilege.

The physician-patient privilege is provided for in § 491.060, RSMo 1959, V.A.M.S., which reads in part as follows:

"The following persons shall be incompetent to testify:

\*    \*    \*    \*    \*    \*

"(5) A physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon."

■ We recognize that application to hospital records of the law involving the physician-patient privilege is troublesome. Hospital insurance, with its attendant waiver forms, is common. Hospital records are seen and copied by staff members and employees. The element of strict secrecy cannot be present under these circumstances. However, the statutory privilege has been applied to hospital records in Missouri and we decline to change the well-established rule stated in Smart v. Kansas City, 208 Mo. 162, 198, 105 S.W. 709, 719, 1 4 L.R.A.,N.S., 565, as follows: "Mr. Elliott in his work on Evidence, in the discussion of such statutes says: 'It seems to be conceded by both opinions that hospital physicians, who attend such persons at the hospital, could not testify as to what they learned while so attending him.' 1 Elliott on Evidence, § 635; Grossman v. Supreme Lodge, K. & L. H., 53 Hun, 637, 6 N.Y.S. 821. This is undoubtedly the rule as announced by all the authorities, and, that being so, it seems that it must follow as a natural sequence that when the physician subsequently copies that privileged communication upon the record of the hospital, it still remains privileged. If that is not true, then the law which prevents the hospital physician from testifying to such matters could be violated both in letter and spirit, and the statute nullified, by the physician copying into the record all the information acquired by him from his patient, and then offer or permit the record to be offered in evidence containing the diagnosis, and thereby accomplish, by indirection, that which is expressly prohibited in a direct manner." See also Vermillion v. Prudential Ins. Co. of America, 230 Mo.App. 993, 93 S.W. 2d 45, and Gilpin v. Aetna Life Ins. Co., 234 Mo.App. 566, 132 S.W.2d 686.

Plaintiff Lilly contends that the order of the trial court protects the physician-patient privilege because the Medical Records Librarian would "delete or mask over the name and address of the patient together with any other information which identifies or discloses the identity of the patient involved in each such chart thereby preventing a disclosure of such patient's name and identity."

Plaintiff Lilly cites Hyman v. Jewish Chronic Disease Hospital, 15 N.Y.2d 317, 258 N.Y.S.2d 397, 206 N.E.2d 338, and Williams v. Buffalo General Hospital, 28 A.D.2d 777, 280 N.Y.S.2d 699, 702, wherein New York Courts held "that a limited

direction which provides proper safeguards to the patients' privilege would be permissible. * * *"

■ These cases do not assist our disposition of this case. The order here allows plaintiff Lilly to examine the records, *unmasked,* so that he may designate those he desires produced and copied. It permits plaintiff Lilly to "discover" privileged matter without providing adequate safeguards. This is not permissible. S.Ct. Rule 57.01(b), V.A.M.R.

The purpose of § 491.060, supra, is the same as that expressed by the New York Court of Appeals when it said that its comparable statute is intended "to protect those who are required to consult physicians from the disclosure of secrets imparted to them; to protect the relationship of patient and physician and to prevent physicians from disclosing information which might result in humiliation, embarrassment or disgrace to patients. * * *" Steinberg v. New York Life Ins. Co., 263 N.Y. 45, 48, 49, 188 N.E. 152, 153, 90 A.L.R. 642, 644.

In Green v. Terminal R. Ass'n of St. Louis, 211 Mo. 18, 35, 36, 109 S.W. 715, 720, this Court referred to § 491.060, supra, as follows: "This statute creates a privilege unknown to the common law. * * *

"Though in derogation of the common law, courts have not applied the rule of strict construction sometimes applied to statutes of that character. To the contrary, the right doctrine seems to be that the policy of the statute is an elevated one. It was intended to invite confidence between patient and physician and to prevent a breach of such confidence, and should be so construed as to further its life and purpose. It is obvious the language of the statute is of such sort that its interpretation and application are troublesome. But, because the task is difficult, shall it be made easy by ignoring it? Or by applying the statute automatically to every case and all information? On the one hand, it might be so construed as to fritter away the provisions of the law. On the other hand, it might be so literally construed as to work great mischief in the administration of justice. The ultimate object of every judicial inquiry is to get at the truth. Therefore no rule of law standing in the way of getting at the truth should be loosely or mehanically applied. The application of such law must be with discrimination, so that it may have the legislative effect intended for it, and yet the investigation of truth be not unnecessarily thwarted."

We recognize that the "investigation of truth" must not be "unnecessarily thwarted" in this case, and that " 'since direct evidence is ordinarily in the possession and control of the alleged conspirators and seldom can be obtained, a conspiracy usually is susceptible of no other proof than that of circumstantial evidence * * *.'" State ex rel. Prudential Ins. Co. of America v. Bland, 354 Mo. 495, 501, 190 S.W.2d 234, 236–237. ' However, we believe that to permit the order of the trial court to stand would be to subvert the legislative effect intended by § 491.060, supra. The patients whose identities would be disclosed and whose records would be scrutinized are not parties to the action in the trial court. They are entitled to protection from humiliation, embarrassment or disgrace.

We do not rule the other issues raised by the parties. This is prohibition and on the record before us we deem it proper to decide only the determinative issue. Respondent is directed to take no further action inconsistent with the views expressed herein.

The preliminary rule in prohibition should be made absolute. It is so ordered.

All concur.