Fred W. KLINGE, M.D., Plaintiff-Appellant,

v.

The LUTHERAN MEDICAL CENTER OF ST. LOUIS, etc., Defendant-Respondent.

No. 35728.

Missouri Court of Appeals, St. Louis District, Division Three.

Nov. 26, 1974.

Motion for Rehearing or Transfer Denied Jan. 14, 1975.

---

James J. Raymond, Clayton, for plaintiff-appellant.

Anderson, Gilbert, Wolfort, Allen & Bierman, Robert G. Burridge, Karl E. Holderle, Jr., St. Louis, for defendant-respondent.

SIMEONE, Presiding Judge.

This is an appeal by plaintiff-appellant Fred W. Klinge, M.D., from a judgment entered on September 10, 1973, by the circuit court of the City of St. Louis which dismissed an injunction suit seeking to restrain defendant-respondent Lutheran Medical Center of St. Louis and its agents from examining the hospital records of plaintiff's patients for the purpose of determining the qualifications of plaintiff. For reasons hereinafter stated, we affirm the judgment.

Dr. Klinge is a physician, having graduated from a well-known medical school in 1942. After serving as an intern and a period of residency, he served in the U. S. Army Medical Corps. He spent four years

in residency surgery, has written several medical articles, engaged in teaching, and was "Board certified." His recognized field of specialization was surgery. He has been a member of the staff of several hospitals and was on the staff of Lutheran Hospital since 1956. Since 1972 he restricted his practice to Lutheran Hospital. Originally, Dr. Klinge was a member of the courtesy staff and was advanced to active staff in 1957 or 1958. In 1970, he was advanced to consulting staff. In 1973, he was president-elect for the medical staff of Lutheran Hospital.

Lutheran Medical Center of St. Louis was incorporated under the official name Lutheran Charities Association of St. Louis in 1863.[1] It is accredited by the Joint Commission on Accreditation of Hospitals, the national accreditation organization of hospitals which makes accreditation surveys.[2] According to the testimony of Hilmer M. Lohmann, Vice President of the Lutheran Medical Center, when a hospital is accredited, a committee of the Joint Commission is sent to the hospital personally to look over the manner in which the hospital is run. The committee checks the records of the patients, the procedures and quality of medical care.

The Accreditation Manual for Hospitals of the Joint Commission (hereafter Manual) was introduced into evidence by the respondent hospital over objection. The Manual contains certain standards. Standard III requires that "The medical staff must establish a procedure to ensure a fair evaluation of the qualifications and the competence of each applicant for appointment, and for periodic reappointment to the medical staff. Whatever the procedure, it should be objective, impartial and fair, broad enough to recognize professional excellence and strict enough to safeguard patients." Manual at 42.[3] Standard IV requires the medical staff to participate in the maintenance of high professional standards and in the continuous study and evaluation of the factors that relate to patient care. Standard V requires medical staff meetings to review clinical work.

The hospital is governed by the Missouri Hospital Licensing Law,[4] and Regulations and Codes promulgated by the Missouri Division of Health (1960 Revised). Section II, subsection B8 of the Regulations and Codes provides, ". . . Records [hospital records and reports] may be removed from the record room only upon order of the administrator by duly qualified persons for purposes of study or research. Patient records are the property of the institution and shall not be removed from the hospital premises except by court order." Regulations and Codes at 80. The Rules also require that although the administrator of the hospital has no control over the professional staff, he is "required to bring to the attention of the president or chief of the professional staff any failure by members of that staff to conform with established hospital policies regarding administrative matters, professional standards and the maintenance of adequate clinical records." Rules at 78.

Section IV, subsection A8 provides, "The staff analyzes at regular intervals

---

1. Laws, 1863, p. 145, approved March 23, 1863. The official name under which it was incorporated is "The Society of the German Lutheran Hospital and Asylum of the City of St. Louis, Missouri."

2. The purposes of the Joint Commission are, inter alia, to establish standards for the operation of hospitals; to conduct survey and accreditation programs to encourage hospitals to promote high quality care in order to give patients the optional benefits that medical science has to offer. Accreditation Manual for Hospitals 1 (1970—updated to 1973).

3. Other portions of the manual introduced in evidence by the hospital which stated that the "overall responsibility for the quality of medical practice rests with the medical staff, the individual staff member must be held accountable for the appropriateness of care rendered to his patients." Manual, 43. The Manual also states, "Medical care evaluation should be a fact-finding and educational function." Medical care evaluation includes tissue review, utilization, diagnostic services, etc.

4. Chapter 197, RSMo 1969. V.A.M.S.

. . . and patients' records are available as the basis for such analysis and review." Rules at 89.

The hospital also participates in the Federal Health Insurance for the Aged (Medicare) program.[5] Pursuant to the act, the Social Security Administration has promulgated certain federal regulations. CFR, Title 20, ch. III, Part 405, Subpart J sets forth certain conditions for participating hospitals.[6] The regulations were admitted into evidence over objection. The federal code requires that the medical records committee (or its equivalent) supervise the maintenance of medical records, and on the basis of documented evidence the committee "reviews and evaluates the quality of medical care given the patient." § 405.-1023(n).[7]

The By-laws, Rules and Regulations of the Medical Staff[8] of Lutheran Hospital, introduced over objection, establish various standing and special committees of the hospital. Among the committees established by the by-laws is the executive committee.[9] The executive committee is responsible for the investigation and disposition of cases of alleged deficiency or misconduct in accordance with Rules and Regulations. Other committees exercising certain functions at the hospital include: (1) the Medical Records Committee (a standing committee which maintains continuous supervision over the medical records and evaluates the quality of medical care given the patient and which considers the adequacy of the patient records regarding histories, examinations, etc.); (2) the Tissue Committee (a standing committee which reviews tissues removed by surgery on a monthly basis); (3) the Utilization Committee (which determines whether hospital facilities have been over or under utilized); and (4) the Surgical Section Committee (which meets monthly and reviews all complications and deaths.)

The Rules and Regulations of the Medical Staff provide in part that when dealing with staff deficiencies and misconduct the Executive Committee and Joint Conference Committee[10] of the medical staff shall follow a prescribed procedure including a formal hearing before certain committees or the Board of Directors of the hospital. Curtailment of privileges, suspension or dismissal may result.

In February, 1972, the Executive Committee of the hospital staff appointed a special medical records review committee to study and review the surgical records of Dr. Klinge because of the "mounting concern over Dr. Klinge's performance in the operating room." Dr. Cesar A. Gomez was appointed chairman of the special committee. That special committee reviewed the surgical records of Dr. Klinge for the five years prior to January 23, 1973, and found certain deficiencies. Dr. Gomez on January 23, 1973, wrote to the then president of the staff, Dr. Melvin A. Allen and informed Dr. Allen that the special committee had reviewed the records and that it found certain deficiencies and that in the opinion of the committee the "present situation is unacceptable," and "corrective action should be instituted."

---

5. P.L. 89–97 (1965), 42 U.S.C.A. § 1395 et seq. (1965).

6. For an institution to be eligible for participation in the program it must meet statutory requirements and substantial compliance with all other conditions. § 405.1002.

7. Subsection (5) of this section provides: "The quality of patient care is evaluated from the documentation on the chart. In some hospitals, this function may be given to an 'audit' or 'evaluation' committee."

8. All physicians who are privileged to attend patients in Lutheran Hospital.

9. Consisting of the President, Vice President, Secretary-treasurer and the chairmen of departments.

10. Consisting of two members of the medical staff appointed by the president and one elected by the voting staff. The Joint Conference Committee is to act with the Executive Committee in investigating and disposing of cases of alleged deficiency or misconduct. By-laws, § 3(b).

On July 6, 1973, the new president of the staff, Dr. Herluf G. Lund, wrote to Dr. Klinge informing him that "there will be a combined meeting of the Executive Committee, the Joint Conference Committee and Special Medical Records Review Committee" on July 11, 1973. This meeting "is to review your surgical records. . . . ." Dr. Klinge was invited to be present and to have a physician assist him. Dr. Klinge was informed that the committees will review and study the records which the special committee found to have certain deficiencies. The letter concluded that it would be the responsibility of the Executive Committee and Joint Conference Committee to make recommendations to the administration and Board of Directors as to whether Dr. Klinge's privileges "will be temporarily curtailed or suspended, or that no action is necessary in your case" all in accordance with the By-laws, Rules and Regulations, § 24.

The meeting was never held, for on July 11, Dr. Klinge filed, in the circuit court of the City of St. Louis, his petition for injunction. The petition recited that (1) he was authorized to practice medicine, (2) the by-laws, rules and regulations of the hospital established various committees, (3) during the hospitalization of his patients records of medical care, treatment and surgical procedures were kept, (4) the hospital, its board of directors and employees "embarked on a course of conduct" for the purpose of suspending or totally withdrawing all or part of his medical privileges, (5) the hospital and its employees have "examined, copied, duplicated or otherwise obtained information from . . . the records kept and maintained . . . regarding the medical care, treatment and surgical procedures . . . performed by Plaintiff and such other private physicians . . . throughout the past five (5) years, prior to January 23, 1973, all without the consent or waiver of any of said patients, and all in violation of § 491.-060(5), V.A.M.S." He alleged that a meeting was scheduled that date for the purpose of reviewing the information "so

illegally obtained," from the records. He prayed therefore for a restraining order enjoining the hospital, the Board of Directors, employees who are members of the Executive Committee and Joint Conference Committee from (1) examining, without the consent or waiver of the patients any information from the contents of the records for the purpose of evaluating his competency "or any other private physician" and (2) using any such information at the schedule hearing or any other time for the purpose of "determining whether to recommend . . . a curtailment, suspension, withdrawal" of his medical or clinical privileges. The trial court issued its temporary restraining order conditioned upon the execution of a bond enjoining defendants from those activities contained in the prayer.

Upon motion filed by the defendant-hospital to dissolve the temporary restraining order, the order was dissolved on September 6, 1973. Defendant hospital filed its answer to the petition admitting the provisions of the by-laws, that medical records were kept as required to do, but denied that the purpose of the July 11 meeting was to curtail, suspend or withdraw the privileges, but to assure that the certain charges would be related to plaintiff and give him an opportunity to respond in a future hearing, with all the rights of due process. The hospital admitted that it examined the records regarding the medical care, treatment and surgical procedures performed by Dr. Klinge and that some of the information concerned patients of the plaintiff hospitalized during the last five years, that it was authorized to do so because the records "are the records of this defendant" and because the Missouri regulations, laws, codes, standards of the Joint Commission on Accreditation of Hospitals, the Code of Federal Regulations on Federal Health for the Aged authorize such examination. It alleged it is its duty to exercise reasonable care to determine that the patients are treated by reasonably competent physicians. In order to determine this, the records must be reviewed and the

consent of the patient is not a necessary prerequisite to review of the records by "duly constituted staff members and committee members for the purpose of maintaining a reasonable and proper institution. . . . " The hospital contended that it could not "operate a hospital properly, or at all, if the petition of plaintiff . . . be rendered in his favor. . . . "

The matter of the issuance of the temporary and permanent injunction was heard on September 10, 1973. There were only two witnesses—Dr. Klinge and the Vice President of the hospital, Helmar M. Lohmann. Prior to testimony, it was agreed that the issue presented was not the merits of whether Dr. Klinge's privileges in the hospital should or should not be inhibited, but that it was a question of "looking at the hospital records." The Court indicated that the issue presented "is to determine whether the hospital records can be examined by the hospital staff to determine whether [Dr. Klinge] is qualified or not; but this Court has no intent to go into the issue of whether he is or isn't; merely whether the records can be used. . . . "

Dr. Klinge testified concerning his education, training and experience; that he had been on the Lutheran staff for seventeen years. The letters from Dr. Gomez to Dr. Allen, and the letter from Dr. Lund to Dr. Klinge as well as parts of the Rules and Regulations of the staff were introduced. Dr. Klinge testified that the special committee had been appointed by the "President of the Executive Committee" in 1972, that the letters indicated that his patients' records were reviewed for the past five years and that he never consented to any use of the patients' records, nor has any patient whom he treated waived or consented to the use of his records.

He further testified that patient records were reviewed by the various committees —the Records Committee, the Tissue Committee, the Utilization Committee and the Surgical Section Committee of the hospital, although he stated he did not have exact knowledge that his records were reviewed and could not specify which records had been reviewed. He assumed that the Surgical Section Committee reviewed his records. The Special Records Committee, however, is in no way connected with these committees.

Dr. Klinge on cross-examination admitted he was familiar with the fact that the hospital operates under the Medicare program and the Missouri Licensing Law and that the hospital was accredited by the Joint Commission, but he was not familiar with the standards, nor the Missouri Licensing Rules, Regulations and Codes.

Mr. Lohmann testified that under the Joint Commission's Accreditation Manual a committee is "sent to the hospital personally to look over the manner in which the hospital is run," and check the records of the hospital concerning the patients, and the procedures and quality of medical care. In the defendant's case, the standards of the Joint Commission from the Manual were read into the record and introduced over objection on the ground that they are contrary to § 491.060(5).

Defendant introduced as part of its case, over objection which was overruled, the Accreditation Manual, the Missouri Hospital Licensing Law Regulations and Codes, Federal Health Insurance for the Aged Regulations, the By-laws of the Medical Staff of the Lutheran Hospital, and a Memorandum on Generalities Regarding "Due Process" to which the Staff Physician is entitled. In the defendant's case, the attention of the Court was directed to S.B. 62 (§ 537.035)[11] concerning liability of medical committees.

11. Section 537.035 reads, "No physician or surgeon licensed under the provisions of chapter 334, RSMo . . . *while acting as an* *authorized member of a hospital review, medical review, utilization review, or peer review committee* functioning for the sole purpose of

Upon termination of the hearing the court found that (1) the defendant is not precluded from examining the records of patients treated by plaintiff; (2) such records are the records of the hospital, that certain committees described in the evidence existed; (3) the physician-patient privilege under § 491.060(5) does not obtain in a situation where the examination of the records by properly designated committees of the hospital for the purpose of carrying out its determination of the qualifications of medical staff; and (4) the physician patient privilege is not binding on the defendant although there is no evidence that patients waived the privilege. The court was aware of State ex rel. Benoit v. Randall, 431 S.W.2d 107 (Mo. banc 1968), but found it distinguishable.

The court, finding that there is no evidence that the information would be disseminated or used for other purposes, entered its judgment dismissing the plaintiff's cause of action.

Dr. Klinge appealed. On this appeal, appellant—Dr. Klinge—contends that the trial court erred in (1) concluding as a matter of law that the physician-patient privilege of § 491.060(5) should not be extended to the "use" of patients' hospital records as "evidence" in hearings to be conducted for the purpose of determining appellant's surgical competency;[12] (2) rendering judgment for the hospital when no patient had relinquished his privilege by waiver or consent to the use of information contained in the patients' records; and

(3) admitting into evidence the hospital's proffered exhibits because they are contrary to the "universal" language of § 491.-060(5) which vests in the patient a privilege of confidentiality.

Respondent-hospital on the other hand contends the court did not err in concluding that the privilege did not extend to a situation where the patients' records are used by hospital staff members and committees appointed to inquire into the quality of medical care afforded patients by a staff physician, and did not err even though no consent was given by the patients. It also contends that the exhibits were properly received since they did not violate § 491.060(5).[13]

Dr. Klinge argues that the statute relating to the physician-patient privilege applies to hospital records, and no matter how meritorious the cause may be, the patient's privilege "cannot be disturbed" without his consent. He argues that examination of these records is not being done for the purpose of aiding or promoting treatment of any patient but rather for the purpose of discovering matter which is privileged for prospective use as evidence before committees to determine Dr. Klinge's surgical competency. His argument, if we understand it correctly, is that the patient impliedly waives his privilege for the purpose of examination of the records for the *treatment* of the patient but does not impliedly waive the privilege so as to examine the records for the purpose of determining the competency and qualifi-

---

maintaining the professional standards of those engaged in the medical profession, or for maintaining professional standards in a hospital as established by its medical society or by the medical staff of the hospital creating the committee . . . shall be liable in damages to any person subject to the actions of the committee or board for any action taken or recommendation made by the committee or board or by a person acting in his official capacity as a member of any such committee or board when such action or recommendation was made within the scope and function of the committee if such action or recommendation was made without malice and was sup-

ported by creditable evidence upon consideration of the whole record." (Emphasis added).

12. The trial court actually found that the physician-patient privilege does not apply to a situation where the hospital, through its designated committees examines patient records for the purpose of determining the qualifications of its medical staff.

13. The respondent contends that the proceedings are moot because of a federal court action. No motion to dismiss was made on the basis that the cause was moot. From the record and facts before us, which are meagre, we do not believe this cause is moot.

cations of a staff physician. He contends that the records were reviewed by the various committees of the hospital at or near the time of treatment and that those committees were able to review and examine the records, but that the examination of the records here was made by a *special medical records review committee, not connected* with the other committees. Therefore, he argues that these proceedings are related solely to a medical determination of Dr. Klinge's competency, and absent consent of the patient, the records may not be examined.

This case is one of first impression in this state. The legal issue presented is whether the physician-patient privilege pursuant to § 491.060(5), RSMo, V.A.M.S., precludes a hospital staff special committee or committees appointed by appropriate authorities of a hospital from examining unmasked medical records of the patients of a staff physician without his or his patients' consent in order to determine the qualifications and competency of the staff physician for the future purpose of holding an adversary hearing at which due process would be afforded the physician and which could result in the curtailment, suspension or revocation of the physician's activities at the hospital.[14]

The resolution of this cause hinges upon whether § 491.060(5), the physician-patient privilege statute, is applicable to the situation at hand. That section provides:

"The following persons shall be incompetent to testify: . . . (5) A physician or surgeon, concerning any information which he may have acquired from any *patient while attending* him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon."

■ There was no physician-patient privilege at common law.[15] It was not until 1828 when New York adopted a statute establishing such a privilege. Missouri was the first state to follow by the enactment of our statute in 1835. The policy behind the statute is the protection of the patient by allowing him to make full disclosure of his condition to his physician *without fear of having the information* used against him at some later date or in a later proceeding. "The purpose was to enable the patient to make such disclosures to his physician as to his ailments, under the seal of confidence, as would enable the physician intelligently to prescribe for him, to invite confidence between physician and patient, and to prevent a breach thereof." Green v. Terminal R. Assn., 211 Mo. 18, 109 S.W. 715, 720–721 (1908).[16]

■ The language of the statute "is of such a sort that its interpretation and application are troublesome." But it has never been held, either in this state or others where the privilege applies, that it is an absolute "universal" and unyielding bar to disclosure by physicians. Numerous exceptions have been engrafted upon the statute.[17] It is impossible and unnecessary

---

14. The trial court correctly stated the issue to be: "[I]t is to determine whether the hospital records can be examined by the hospital staff to determine whether [Dr. Klinge] is qualified or not; but this Court has no intent to go into the issue of whether he is or isn't; merely whether the records can be used. . . ."

15. 8 Wigmore, Evidence 818 (McNaughton Rev.1961); Duchess of Kingston's Trial, 20 How.St.Tr. 355, 573 (1776). See DeWitt, Privileged Communications Between Physician and Patient (1958) for a general discussion of the privilege.

16. Professor Wigmore severely criticizes the privilege. "The injury to justice by the repression of the facts of corporal injury and disease is much greater than any injury which might be done by disclosure." 8 Wigmore, supra, at 830. He says the real support of the privilege seems to be mainly the weight of professional medical opinion pressing upon the legislature. The general privilege has been abolished in the Proposed Rules of Evidence for the United States District Courts and Magistrates; it establishes only a psychotherapist privilege. Rule 504.

17. ". . . It will not avail to say that we are bound to a hard and fast construction of

to list them all. The privilege is relaxed or inapplicable in certain proceedings such as workmen's compensation [18] or contracts of insurance where there is a waiver. Cromeenes v. Sovereign Camp of Woodmen of the World, 205 Mo.App. 419, 224 S.W. 15, 17–18 (1920); Randolph v. Supreme Liberty Life Ins. Co., 359 Mo. 251, 221 S.W.2d 155, 157 (banc 1949) (death certificate); will contests, Spurr v. Spurr, 285 Mo. 163, 226 S.W. 35, 40 (Mo.1920); perhaps criminal proceedings,[19] battered child cases, § 210.105(4), in a plea of mental disease and defect, § 552.030(6) and in cases of malpractice. Cramer v. Hurt, 154 Mo. 112, 55 S.W. 258 (Mo.1900).

■ The privilege may, of course, be waived in numerous ways. In State ex rel. McNutt v. Keet, 432 S.W.2d 597 (Mo. banc 1968), our Supreme Court discussed the various ways and held that "once the matter of the plaintiff's physical condition is in issue under the pleadings, plaintiff will be considered to have waived the privilege under § 491.060(5) so far as information from doctors or medical and hospital records bearing on that issue is concerned." 432 S.W.2d at 601.[20]

■ There is no question that hospital records are included within the privilege. State ex rel. Benoit v. Randall, supra, 431 S.W.2d at 105; Vermillion v. Prudential Ins. Co., 230 Mo.App. 993, 93 S.W.2d 45, 49 (1936); Gilpin v. Aetna Life Ins. Co., 234 Mo.App. 566, 587, 132 S.W.2d 686, 699

(1939); Fitzgerald v. Metropolitan Life Ins. Co., 149 S.W.2d 389, 391 (Mo.App. 1941). But the fact that such records are included within the privilege does not resolve the present issue.

The history of our statute is that the privilege has never been held to be absolute. The circumstances, facts and the interests of justice determine the applicability of the statute. The statute has never been mechanically applied—"[t]he application of such law must be with discrimination, so that it may have the legislative effect intended for it, and yet the investigation of truth be not unnecessarily thwarted." [21]

■ We have here a situation in which the hospital, through a special internal committee, desires to examine the hospital records of the patients of Dr. Klinge without his or his patients' consent in order to determine the qualifications of the doctor [22] under conditions which give rise to some concern regarding his qualifications.

Few decisions analogous to this problem have been cited in the briefs and our research has failed to disclose any authorities directly in point. In New York City Council v. Goldwater, 284 N.Y. 296, 31 N. E.2d 31 (1940), the Court of Appeals held that the privilege was applicable to a legislative committee which had issued subpoenas upon the Commissioner of Hospitals of New York requiring the production of hos-

---

our statute—that it is to us an iron-bound law of the Medes and the Persians, eternally unchangeable—and that we cannot by construction ingraft upon it a single abatement, in jot or tittle, by invoking the doctrine of waiver, because, forsooth, there are no waivers or provisos therein expressly written." Epstein v. Penn. R. Co., 250 Mo. 1, 156 S.W. 699, 705 (1913).

18. §§ 287.140(5) and 287.210, RSMo 1969, V.A.M.S.

19. See cases collected in Annot., 7 A.L.R.3d 1458 (1966).

20. In the course of the opinion it was noted that various acts amount to a waiver. See Peterson, The Patient-Physician Privilege in Missouri, 20 U. of Kan.City L.Rev. 122 (1952) and Comment, Waiver of the Physician-Patient Privilege in Missouri, 34 Mo.L.Rev. 397 (1969).

21. Lamm, J. in Green v. Terminal R. Assn., supra, 109 S.W. at 720.

22. We have some question whether Dr. Klinge has standing to maintain this injunction action for the privilege is that of the patient and not the physician. Foerstel v. St. Louis Public Service Co., 241 S.W.2d 792, 799 (Mo. App.1951).

pital records for the purpose of investigating charges of negligence and maladministration in the treatment of patients at Lincoln Hospital.[23]

However, in a later New York decision, Hyman v. Jewish Chronic Disease Hospital, 15 N.Y.2d 317, 258 N.Y.S.2d 397, 206 N.E.2d 338 (1965), the director of a hospital sought to inspect certain hospital records. The trial court entered an order to allow the director to inspect certain hospital records and patients' charts and the hospital appealed. It was held by the Court of Appeals that the director was entitled to the inspection of the records to investigate into facts as to alleged improper experimentation on the patients. To maintain the confidentiality of the records, however, it was recognized that the names of the particular patients be kept confidential. In upholding the order of the trial court as modified, the Court had occasion to say:

> "Actually, the supposed strict secrecy does not really exist as to qualified persons since these records have been seen, read and copied by numerous staff members and employees of the hospital and of the co-operating institution." 258 N.Y.S.2d at 399, 206 N.E.2d at 339.

Our Supreme Court dealt with the problem of examining hospital records in a cause alleging that certain defendant physicians conspired to reduce the plaintiff-physician's privileges at a certain hospital in Kansas City. State ex rel. Benoit v. Randall, supra. The plaintiff physician sought to discover all official hospital charts of all patients admitted to the hospital for the past three years under the care of every member of the staff. The trial court granted the order and the hospital sought prohibition. The court made the writ absolute, holding that the hospital records were privileged because to admit the records in evidence would accomplish by indirection that which is expressly prohibited in a direct manner.

None of the decisions is dispositive of this cause. State ex rel. Benoit v. Randall is clearly distinguishable because the records were sought in connection with a civil suit for conspiracy. We deal here with the internal operation of a hospital to determine the qualifications of its own staff.

■ We believe that under the circumstances here the hospital records are capable of being examined by the staff committee or committees for the purpose of determining the qualifications of a staff physician.

■ First, the policy behind the statute to encourage a patient to make full disclosure of his condition to his physician without fear of having the information used against him at a later date is not violated. The public's interest in the disclosure of the information to the internal staff of the hospital and in assuring proper medical and hospital care outweighs the patient's interest in concealment. It is doubtful if the privilege established by the statute was ever intended to apply to internal staff responsible for the welfare and health of the patients admitted to the hospital.[24] This was at least recognized in Benoit, supra: "Hospital records are seen and copied by staff members and employees. The element of strict secrecy cannot be present under these circumstances." 431 S.W.2d at 109.

Second, we believe that § 491.060(5) must be construed in the light of other rules and regulations governing the standards and requirements applicable to modern

---

23. McCormick states however that "Here it seems strongly arguable that the very policy of promoting better medical care, which is the purpose of the privilege, should lead the court to open the door for this investigation." McCormick, Evidence at 223. See Comments, 26 Cornell L.Q. 482, 484 (1941) ; 89 U.Pa. L.Rev. 961 (1941) ; 54 Harv.L.Rev. 705 (1941).

24. In the event that subsequent external administrative or judicial proceedings are held, the confidentiality of the patient's name can be adequately assured.

hospitals. The hospital must adhere to the standards of the Joint Commission on Accreditation of Hospitals, follow the Missouri Hospital Licensing Law Regulations and Codes adopted by the Division of Health and to participate in the Medicare program must meet the conditions of the regulations adopted under Federal Health Insurance for the Aged. All of these modern enactments expressly or impliedly deal with the evaluation of the qualifications and competency of staff physicians and authorize internal analysis and review of patients' records for the purpose of evaluating the quality of medical care.

We believe that these provisions, conditions and rules and regulations are for the benefit of the public and the patients committed to the care of the hospital and staff so that the statute does not obtain. We believe that an internal staff examination of patients' records of a staff physician under the circumstances as authorized by various rules and regulations assures to the individual patient that degree of professional treatment to which he is entitled and is to the benefit and welfare of the public that the hospital is conducted at a highly professional level.

We therefore hold, as did the trial court, that (1) § 491.060(5) does not preclude staff committees of a hospital for good cause from examining the medical records of the patients of a staff physician to determine his competency and qualifications and (2) that the physician-patient privilege as set forth in the statute does not obtain under the circumstances presented in this record.

The trial court did not err in admitting the exhibits offered by the respondent-hospital which dealt with the rules and regulations of accrediting agencies as being violative of § 491.060(5). They were relevant to the determination of the issue.

Therefore, the judgment of the trial court is affirmed.

McMILLIAN and GUNN, JJ., concur.