**TERRE HAUTE REGIONAL HOSPITAL, INC. and Hospital Corporation of America, Appellants–Defendants,**

v.

**Linda S. TRUEBLOOD, Appellee–Plaintiff.**

**No. 61A04–9107–CV–223.[1]**

Court of Appeals of Indiana, First District.

Oct. 22, 1991.

1. This case was diverted to this office by direction of the Chief Judge.

John D. Nell, Martha W. Irwin, Wooden, McLaughlin & Sterner, Indianapolis, for appellants-defendants.

Mary A. Findling, Scott A. Weathers, Price & Barker, Indianapolis, Gary Hanner,

Hanner, Hanner & Hanner, Rockville, Eric A. Frey, Frey, Hunt, Hassler & Lorenz, Terre Haute, for appellee-plaintiff.

ROBERTSON, Judge.

The Terre Haute Regional Hospital Inc. and its parent corporation, the Hospital Corporation of America, [THRH] bring this interlocutory appeal challenging the trial court's order compelling the discovery of the medical records of approximately eight hundred (800) patients who are not parties to this lawsuit. THRH raises three issues, but; because one demands that we reverse, we address it only. It is:

Whether the trial court may compel the discovery of the medical records of non-party patients who have not waived their physician-patient privilege when all information regarding the identities of these patients has been redacted from the records?

## FACTS

The plaintiff, Linda S. Trueblood, brought this action against THRH alleging that Dr. Manuel Cacdac, a staff physician at THRH, performed two unnecessary surgeries on her back and neck in 1980 and 1981. Trueblood alleges that THRH was negligent in appointing and reappointing Dr. Cacdac to its staff and in supervising and monitoring Dr. Cacdac's performance. Trueblood asserts further that THRH concealed information regarding Dr. Cacdac's performance of unnecessary surgeries in order to benefit economically from these surgeries.[2]

Trueblood argues that in order to succeed in her lawsuit, she must show that THRH had actual or constructive knowledge that Dr. Cacdac was performing unnecessary surgeries at THRH. She argues that in order to prove this knowledge she must have access to the medical records of all those patients similarly situated to her who received surgeries performed by Dr. Cacdac at THRH.

The trial court's order which is the subject of this interlocutory appeal provides that Trueblood's attorneys and physician expert may enter THRH and inspect the *unredacted* hospital charts and radiographs of Dr. Cacdac's patients who underwent surgery or surgeries at THRH in the calendar years 1979, 1980, and 1981 involving cervical disc excisions and/or fusions, the lumbar spine, laminectomy, or chemonucleolysis. Before inspecting the unredacted charts, Trueblood's attorneys and physician expert must sign a confidential protective order stating that they will never disclose the names of any of the patients whose charts they inspect and will never make any effort to contact any of the patients whose charts they inspect. Before any portion of any chart can be reproduced, Trueblood must seek leave of court specifying the patient chart by its hospital identification number and specify the portion of the chart to be reproduced. The hospital will reproduce the record with the patient's identifying information (the patient's name, address, telephone number, date of birth, insurance company, religion, social security number, race and place of employment) redacted. Trueblood is to pay the costs associated with copying the records including the cost of producing copies from microfilmed radiographs.

---

**2.** In *Terre Haute Regional Hosp., Inc. v. Basden* (1988), Ind.App., 524 N.E.2d 1306, the plaintiff, who received extensive lumbar surgery from Dr. Cacdac, brought an action against THRH alleging that THRH negligently supervised Dr. Cacdac's actions and intentionally and fraudulently retained Dr. Cacdac, an allegedly unqualified physician, in order to derive financial profits from alleged unnecessary surgeries performed by Dr. Cacdac. The hospital brought an interlocutory appeal challenging the trial court's order compelling THRH to respond to the plaintiff's discovery requests. We held: 1) materials privileged under the Peer Review Statute, IND. CODE 34-4-12.6-1 et seq., were outside the scope of discovery; and, 2) information regarding events which occurred after plaintiff's last surgery, and procedures which were not similar to those performed on plaintiff, were relevant to the plaintiff's claim against THRH and were therefore discoverable. *Id.* The *Basden* case does not guide our analysis in the present case because *Basden* did not involve an assertion of the physician-patient privilege.

## DECISION

■ When reviewing a trial court's ruling pertaining to a discovery issue, we apply an abuse of discretion standard. *DeMoss Rexall Drugs v. Dobson* (1989), Ind. App., 540 N.E.2d 655. An abuse of discretion regarding a discovery matter occurs when the trial court reaches an erroneous conclusion clearly against the logic and effect of the facts of the case. *CIGNA–INA/Aetna v. Hagerman–Shambaugh* (1985), Ind.App., 473 N.E.2d 1033, *trans. denied.*

■ Trueblood concedes that the medical records it seeks to discover contain information protected by the physician/patient privilege codified under IND.CODE 34–1–14–5(3). When information sought is protected by the physician-patient privilege, the physician (and the hospital custodian of medical records) not only has the right but also the duty to assert the physician-patient privilege. *State v. Jaggers* (1987), Ind. App., 506 N.E.2d 832, *trans. denied.*

■ If information is privileged under I.C. 34–1–14–5 it falls outside the scope of discovery. 2 W. Harvey, Rules of Procedure Annotated § 26.5 at 494 (1987); Ind.Trial Rule 26(B)(1). There is no provision in the trial rules which will permit access to privileged information, unless the privilege is waived by the person to whom it belongs. 2 W. Harvey, Rules of Procedure Annotated § 26.5 at 494 (1987).

■ The physician-patient privilege is held by the patient and only he, or his heirs or personal representative after his death, may waive the privilege. *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 526. The patient's waiver of the privilege may be express or implied. *Id.* When a patient who is a party to a lawsuit places his mental or physical condition in issue, he impliedly waives the physician-patient privilege to those matters causally and historically related to the condition put in issue and which have direct medical relevance to the claim. *Id.* However, medical information unrelated to the condition in issue and irrelevant to the cause remains privileged and therefore protected from discovery. *Id.* The *Canfield* court noted that the physician-patient privilege:

> has been justified on the basis that its recognition encourages free communications and frank disclosure between patient and physician which, in turn, provide assistance in proper diagnosis and appropriate treatment. To deny the privilege, it was thought, would destroy the confidential nature of the physician-patient relationship and possibly cause one suffering from a particular ailment to withhold pertinent information of an embarrassing or otherwise confidential nature for fear of being publicly exposed.

563 N.E.2d at 529 (Citing *Collins v. Bair* (1971), 256 Ind. 230, 236, 268 N.E.2d 95, 98). The *Canfield* court noted further that privileges protect against judicially compelled disclosure of confidential information because the "harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself." *Id.* 563 N.E.2d at 529.

Moreover, access to health records is limited by statute consistently with the physician-patient privilege. Indiana Code § 16–4–8–3 specifies that health records may be requested by a competent patient; the parent, guardian or custodian of an incompetent patient; and the personal representative, spouse, or child of a deceased patient. Access to records related to mental health treatment and alcoholism or other substance abuse treatment is even more strictly limited by state and federal statutes. I.C. 16–14–1.6–8(f); 42 U.S.C. § 290dd–3; 42 U.S.C. § 290ee–3.[3]

■ We believe the important policies advanced by the physician-patient privilege as set out above in our citation to the *Canfield* decision demand that we employ a bright-line rule in the present case to

---

3. Trueblood does not address THRH's assertion that the compelled disclosure of the nonparty patients' charts is violative of the above statutes regarding the dissemination of mental health, alcoholism, and substance abuse treatment records.

protect the privilege provided by our legislature. The law should protect a patient's legitimate expectation that the information he discloses to his doctor in confidence which may be contained in his medical records cannot be accessed by a stranger for use in litigation without that patient's knowledge, consent, or waiver. As in the case of *Estate of Voelker* (1979), 182 Ind. App. 650, 396 N.E.2d 398, we hold that a stranger is in no position to cause a privilege to be removed.

 We hold the discovery of medical records of nonparty patients who have not waived, either expressly or impliedly, their physician-patient privilege may not be compelled regardless of the measures taken to protect against the disclosure of the nonparty patients' identities. We believe that the limitation of access to medical records imposed by our legislature under I.C. 16–4–8–3 (consistent with the statutorily created physician-patient privilege under I.C. 34–1–14–5) extends to prohibit the dissemination of medical records to strangers regardless of whether information pertaining to the identity of the patient is redacted.[4]

We are impressed with the care and thoughtfulness the trial court employed to protect the identities of the nonparty patients in crafting the present order compelling the discovery of the nonparty patients' medical records. However, we agree with the court in *Parkson v. Central DuPage Hospital* (1982), 105 Ill.App.3d 850, 61 Ill. Dec. 651, 435 N.E.2d 140, that the redaction of patient identification information does not adequately protect the patient, his expectation of confidentiality, or the physician-patient privilege.

We appreciate Trueblood's argument that the discovery of the nonparty patient medical records in question is relevant and may very well be essential to the successful prosecution of her lawsuit against THRH. However, as we stated in *Ernst & Ernst v. Underwriters Nat. Assurance Co.* (1978), 178 Ind.App. 77, 381 N.E.2d 897, the legislature enacts statutory privileges:

> to foster some relationship or protect some interest that is believed to be of sufficient social importance to justify the sacrifice of relevant evidence to the fact finding process.

178 Ind.App. at 86, 381 N.E.2d at 902. We have no hesitation in concluding (in accordance with our legislature's imposition of the privilege) that the social importance of protecting the confidence of the physician-patient relationship and the confidentiality of nonparty patients' medical records greatly outweighs Trueblood's interest (or any interest society may have) in the prosecution of the present lawsuit against THRH (or in similar lawsuits prosecuted against other hospitals).

We have concluded that the medical records of nonparty patients are protected by the physician-patient privilege and are outside the scope of discovery whether or not patient identification information is redacted from the records. Therefore, we hold the trial court's order compelling discovery of the nonparty patients' medical records constitutes an abuse of discretion. We vacate the discovery order and remand to the trial court for proceedings consistent with our decision.

BAKER and BUCHANAN, JJ., concur.

---

4. In so holding, we are cognizant of the decisions from other jurisdictions cited by Trueblood which hold or imply that the production of nonparty medical records with the information identifying the patient redacted is not violative of the physician-patient privilege. *Ziegler v. Super. Ct. in and for Cty. of Pima* (1982), 134 Ariz. 390, 656 P.2d 1251; *Application of American Tobacco Co.* (2d.Cir.1989), 880 F.2d 1520; *Community Hospital Ass'n v. District Court* (1977), 194 Colo. 98, 570 P.2d 243; *Rudnick v. Superior Court of Kern County* (1974), 11 Cal.3d 924, 114 Cal.Rptr. 603, 523 P.2d 643; *Amisub (North Ridge Hospital), Inc. v. Kemper* (1989), Fla.App., 543 So.2d 470; *Ventimiglia v. Moffitt* (1986), Fla.App., 502 So.2d 14; *State ex rel. Benoit v. Randall* (1968), Mo., 431 S.W.2d 107; *Osterman v. Ehrenworth* (1969), 106 N.J.Super. 515, 256 A.2d 123.