**TERRE HAUTE REGIONAL HOSPITAL, INC. and Hospital Corporation of America, Appellants (Defendants Below),**

v.

**Linda S. TRUEBLOOD, Appellee (Plaintiff Below).**

No. 61S04–9210–CV–847.

Supreme Court of Indiana.

Oct. 21, 1992.

John D. Nell, Martha W. Irwin, Wooden McLaughlin & Sterner, Indianapolis, for appellants.

Mary A. Findling, Jerry A. Garau, Scott A. Weathers, Price & Barker, Indianapolis, for appellee.

ON PETITION TO TRANSFER

KRAHULIK, Justice.

■ We grant transfer to decide whether the trial court may compel the production of the medical records of non-party patients who have not waived the physician-patient privilege. We hold that when all the information regarding the identities of these non-party patients has been redacted from the records, production of the medical records will not violate the physician-patient privilege.

Linda S. Trueblood (Plaintiff–Appellee below) seeks transfer after the Court of Appeals decided that Terre Haute Regional Hospital and Hospital Corporation of America, its parent corporation, (Defendant–Appellants below), (collectively "the hospital") were able to assert the physician-patient privilege to preclude the production of the non-party medical records even if the patient identification information is redacted from the records. *Terre Haute Regional Hosp., Inc. v. Trueblood* (1991), Ind. App., 579 N.E.2d 1342.

*Facts*

Trueblood brought this action against the hospital alleging that Manuel Cacdac, M.D., a staff physician at the hospital, performed two unnecessary surgeries on her neck and back in 1980 and 1981. Trueblood alleges that the hospital was negligent in supervising and monitoring Dr. Cacdac's performance and that the hospital's negligence was the cause of her injuries.

During discovery, Trueblood served a Request for Production of Documents and Entry on Land for Inspection, pursuant to which she sought to inspect and copy hospital charts and radiographs of Dr. Cacdac's patients who underwent surgery for their neck or back during the calendar years of 1979, 1980 and 1981 at the hospital. The

hospital asserted multiple objections to the request including that the documents are privileged and confidential. Subsequently, Trueblood filed a motion to compel. The trial court issued an order, later supplemented, which permitted Trueblood's attorney and expert to inspect the medical records in an unredacted form. The order, however, also required Trueblood's attorney and expert to sign a confidential protective order stating they would never disclose the name of any patient, that copies of the records could only be obtained through leave of court and that these copies would not contain patient identification information. The hospital took an interlocutory appeal pursuant to Ind. Appellate Rule 4(B)(6) challenging the discoverability of the non-party medical records.

The Court of Appeals held that the trial court's order compelling discovery of the non-party medical records constitutes an abuse of discretion because the medical records of non-party patients are protected by the physician-patient privilege and are outside the scope of discovery even if the patient identification information is redacted from the records. 579 N.E.2d at 1346. Consequently, the Court of Appeals vacated the discovery order and remanded the action to the trial court to proceed consistent with the decision. We conclude that the non-party patient medical records are discoverable where there are adequate safeguards to protect the identity of the non-party patient.[1]

*Physician–Patient Privilege*

In Indiana, discovery rules are designed "to allow liberal discovery with a minimum of court involvement in the process." *Chustak v. Northern Ind. Pub. Serv. Co.* (1972), 259 Ind. 390, 395, 288 N.E.2d 149, 152–3. Indiana Trial Rule 26(B)(1) requires that the information sought be relevant, admissible, or reasonably calculated to lead to the discovery of admissible evidence, and not privileged. The instant case requires

---

1. Trueblood stated she was willing to forego the initial inspection and review records only after the hospital had redacted the patient information. The hospital responded that the cost is too burdensome. We need not decide this issue in light of our holding, but will allow the discovery that Trueblood was entitled to under the trial court order.

the Court to balance the competing interests of this scope of discovery and the physician-patient privilege.

Indiana generally recognizes that privileges are statutory in nature and that it is within the power of the legislature to create them. *DeMoss Rexall Drugs v. Dobson* (1989), Ind.App., 540 N.E.2d 655, 657; *Scroggins v. Uniden Corp. of America* (1987), Ind.App., 506 N.E.2d 83, 86. Most privileges were unknown at common law and, as a result, are to be strictly construed to limit their application. *Scroggins*, 506 N.E.2d at 86.

The physician-patient privilege did not exist at common law, but was statutorily created to extend to this relationship the same rule of public policy which protected the professional confidence between an attorney and client. *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 526, 528. The two privileges are codified in the same statute, *Ind.Code* § 34–1–14–5, and provide similar protection in each relationship. The physician-patient privilege

> has been justified on the basis that its recognition encourages free communication and frank disclosure between patient and physician which, in turn, provide assistance in proper diagnosis and appropriate treatment. To deny the privilege, it was thought, would destroy the confidential nature of the physician-patient relationship and possibly cause one suffering from a particular ailment to withhold pertinent information of an embarrassing or otherwise confidential nature for fear of being publicly disclosed.

*Canfield,* 563 N.E.2d at 529 quoting *Collins v. Bair* (1971), 256 Ind. 230, 236, 268 N.E.2d 95, 98.

Despite the apparent prohibitory language of the physician-patient privilege statute, it does not create an absolute incompetency, but rather a privilege for the benefit of the patient. *Goodwin v. State* (1991), Ind.App., 573 N.E.2d 895, 897, *trans. den.* The statute, however, is intended to foreclose disclosure of patient information where the method of treatment is associated closely with the nature of the ailment so that the disclosure itself will reveal the ailment. *See State v. Jaggers* (1987), Ind.App., 506 N.E.2d 832, 835.

It is in this context that the hospital asserts that the physician-patient privilege precludes discovery of the non-party medical records. Trueblood asserts that where adequate safeguards are established to protect the patient's confidentiality, there is no breach of the physician-patient privilege.[2] The issue is one of first impression in Indiana and as part of our review, the law of other jurisdictions is considered.

The rule that the physician-patient privilege is not violated by the review of non-party medical records where adequate safeguards exist is followed in several jurisdictions: *Ziegler v. Superior Ct.* (1982), 134 Ariz. 390, 656 P.2d 1251; *Rudnick v. Superior Ct.* (1974), 11 Cal.3d 924, 114 Cal.Rptr. 603, 523 P.2d 643; *Community Hosp. Ass'n. v. District Ct.* (1977), 194 Colo. 98, 570 P.2d 243; *Amisub (Northridge Hosp.), Inc. v. Kemper* (1989), Fla.App., 543 So.2d 470; *State ex rel Benoit v. Randall* (1968), Mo., 431 S.W.2d 107; *Ventimiglia v. Moffitt* (1986), Fla.App., 502 So.2d 14; *Osterman v. Ehrenworth* (1969), 106 N.J.Super. 515, 256 A.2d 123. *But see contra, Parkson v. Central DuPage Hosp.* (1982), 105 Ill.App.3d 850, 61 Ill.Dec. 651, 435 N.E.2d 140.

Similar to Indiana's purpose for the privilege, the Arizona Supreme Court in *Ziegler* recognized that the purpose of the privilege "is to insure that the patient will receive the best medical treatment by encouraging full and frank disclosure of medical history and symptoms by a patient to his doctor."

---

**2.** Additionally, Trueblood asserts *Ind.Code* § 34–3–15.5–4(6) creates an exception to the physician-patient privilege. *Ind.Code* § 34–3–15.5–4 states "hospitals using such systems for the keeping of their hospital medical records shall do so in such a manner that the information may be made readily available in written or printed form to authorized persons only." The section then describes who is an authorized person. This section, however, does not create authority to obtain the medical records, but rather regulates the manner in which the hospital is to produce the records once a person has become authorized. Therefore, this section does not create an exception to the physician-patient privilege in itself.

*Ziegler,* 656 P.2d at 1255. As a doctor and patient need full disclosure in order for the doctor to "best" diagnose his patient, the court seeks full disclosure to "best" ascertain the truth. The Missouri Supreme Court in *State v. Randall* explained,

> The ultimate object of every judicial inquiry is to get at the truth. Therefore no rule of law standing in the way of getting at the truth should be loosely or me[c]hanically applied. The application of such law must be with discrimination, so that it may have the legislative effect intended for it, and yet the investigation of truth be not unnecessarily thwarted.

431 S.W.2d 107, 110. By providing adequate safeguards to protect the identity of the non-party patients, a court may give effect to the intent of the statute and the physician-patient privilege is not violated. *See Ziegler,* 656 P.2d at 1255; *Randall,* 431 S.W.2d at 110.

The California Supreme Court examined the issue in *Rudnick v. Superior Court of Kern Co.,* 114 Cal.Rptr. 603, 610–11, 523 P.2d 643, 650–51. In *Rudnick,* the trial court denied discovery on the ground that production would violate the physician-patient privilege. The California Supreme Court reversed, stating in footnote 13 of its opinion:

> Because the record indicates sporadic and unclear concern by the parties as to the discoverability of patients' names in the context of the physician-patient privilege, we note the following for the guidance of the trial court should it determine to exercise its discretion to protect an absentee holder of the privilege. The whole purpose of the privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. Therefore if the disclosure of the patient's name reveals nothing of any communication concerning the patient's ailments, disclosure of the patient's name does not violate the privilege. If, however, disclosure of the patient's name inevitably in the context of such disclosure reveals the confidential information, namely the ailments, then such disclosure violates the privilege. *Conversely if the disclosure reveals the ailments* *but not the patient's identity, then such disclosure would appear not to violate the privilege.*

*Id.* at 610–11, 523 P.2d at 650–51. (Citations omitted.) (Emphasis added.)

*Rudnick* recognized that the trial court acted as the protector of the absentee holder of the privilege and that the trial court is in a position to prescribe the safeguards which will adequately protect the non-party patient. Where adequate measures have been taken to protect the identity of the non-party patient, their consent is not required before allowing the records to be discovered. *Community Hosp. Ass'n.,* 570 P.2d at 245. The court will permit discovery where "the purpose of the statute has been achieved by the conditions imposed by the respondent court." *Id.* at 244.

Along with a patient's individual interest in quality medical care, the public has an interest in being protected from incompetent physicians. In many situations, a hospital is in the best position to protect the public and has a duty to supervise the members of its medical staff and to prevent exposure of future patients to medical incompetence. *See Ziegler,* 656 P.2d at 1255. It is unlikely that a patient would be inhibited from confiding in his physician where there is no risk of humiliation and embarrassment, and no invasion of the patient's privacy. *Id.* The public policy involved is strong and carries a great societal interest. In situations where the medical records are relevant, a "blanket prohibition against examination and use against the hospital of such records would result in an injustice." *Id.*

The hospital would have us analyze this issue pursuant to *Parkson v. Central Du-Page Hosp.,* 61 Ill.Dec. 651, 435 N.E.2d 140. In *Parkson,* the Illinois Appellate Court held that the medical records of non-parties are not discoverable regardless of the steps taken to protect the identity of the patients. The court stated, "whether the patient's identity would remain confidential by the exclusion of their names and identifying numbers is questionable at best." *Id.* at 655, 435 N.E.2d at 144. The

hospital was able to assert the physician-patient privilege on the basis that the patient disclosed this information with an expectation of privacy and that a protective order could not protect this expectation of privacy. *Id.*

We disagree with this reasoning. Where there is a protective order, as here, the attorney and expert examining the non-party medical records are prohibited from revealing or contacting these non-party patients pursuant to the court order. Additionally, the attorney and expert would be bound by their own professional ethics and would be protecting their professional integrity, a breach of which could bring harm to their position. When acting in this capacity the attorney and expert are similar to a hospital clerk who examines the records, except there are additional safeguards to protect the patient's confidentiality. By placing safeguards on the release of the information, the former patient's privacy expectations are satisfied.

Therefore, we hold that where adequate safeguards exist to protect the identity and confidentiality of the non-party patient, the trial court may allow the discovery of the non-party patient medical records even where the patient has not waived the physician-patient privilege.

▮▮▮ Our standard of review in discovery matters is limited to determining whether the trial court abused its discretion. *Logal v. Cruse* (1977), 267 Ind. 83, 89, 368 N.E.2d 235, 238, *cert. den.* 435 U.S. 943, 98 S.Ct. 1523, 55 L.Ed.2d 539. Here, the Court of Appeals stated, "we are impressed with the care and thoughtfulness the trial court employed to protect the identities of the non-party patients in crafting the present order compelling discovery of the non-party patients' medical records." 579 N.E.2d at 1346. The trial court's order requires Trueblood's attorney and expert to sign a confidential protective order, requires leave of court to copy inspected records, and requires all copied records to have the patient information redacted. We believe the trial court order balances the competing interests by adequately safeguarding the privacy of non-party patients

and preserving the spirit of the physician-patient privilege.

### Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, and affirm the ruling of the trial court.

DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents, without opinion.

SHEPARD, C.J., dissents, with separate opinion.

SHEPARD, Chief Justice, dissenting.

I agree with the majority that resolving this appeal calls upon us to "balance the competing interest of this scope of discovery and the physician-patient privilege." Maj. op. at 1360. I also agree that a tough discovery order such as the one entered by the trial court in this case does much to limit the invasion of the physician-patient relationship.

Accepting the value of this effort to protect that relationship, I think one must still ask the question, "What goes on the other side of the balance?" That is, what benefit to the truth-finding process in the malpractice case is derived from our permitting this invasion of the confidentiality of patients? It is difficult to see how the redacted patient records are admissible during a trial on the merits of the malpractice claim. Indeed, how could the receipt of these records "lead to the discovery of admissible evidence"? Ind. Trial Rule 26(B)(1).

The majority mentions nothing about how forcing disclosure of these records might add to the truth-finding process, citing only the policy of liberal discovery, which we hold to be beneficial. Trueblood's brief in this Court, on the other hand, contains some suggestion about the use of these documents by virtue of its reliance on *Ziegler v. Superior Court*, 134 Ariz. 390, 656 P.2d 1251 (App.1982), and similar cases. Trueblood says she will use the information to prove that the hospital knew it had a doctor on its staff who was committing malpractice.

The parties do not suggest how redacted patient records will be used to do this, and the apparent methods seem unattractive.

First, presumably, someone will testify about these acts of malpractice on other patients. The patient will, of course, not be available. The treating physician would not seem like a good prospective witness on the subject, for he can hardly be subject to cross-examination without the necessity of talking about the patient at some length and probably with details not covered in the hospital records. The record keeper is unlikely to know anything about the actual treatment, and thus would not be a very useful witness on this issue.

Second, if the plaintiff is to have this use of the records, must not the hospital have at its disposal a way to investigate whether those patients really were the victims of malpractice? How are they to do that without resorting to the patients themselves? Or without having the benefit of other records of those patients not in the possession of the hospital?

Because all of this seems so unlikely, I am led to think that we will end up with a battle of experts based solely on whatever records the hospital possesses. Both sides call expert witnesses who offer up their own opinions about whether malpractice occurred in each of dozens of patients, none of whom they have ever seen, on the basis of redacted hospital records alone.

In short, if this material is to be used as evidence or if it is to lead to admissible evidence, either one must ultimately intrude further on the physician-patient relationships of persons who are strangers to this litigation *or* the evidence will ultimately be used in a "t'is-t'aint" debate between experts who are by definition ill-informed.

The value of all this as evidence for finders of fact seems pretty marginal. For that reason, I would strike the balance in favor of the many patients who went to their doctor expecting confidentiality. Seeing this as an invasion of lots of patients for a purpose of little value to one patient, I dissent.

GIVAN, J., joins in this dissent.